**Gregory RESNOVER, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 1285S515.

Supreme Court of Indiana.

May 27, 1987.

Susan K. Carpenter, Public Defender, Paul Levy, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

Following a jury trial, appellant was convicted of Murder and Conspiracy to Commit Murder, a Class A felony. The court imposed the death penalty on the murder count and a fifty (50) year sentence on the conspiracy count. The convictions and sentences were affirmed on direct appeal. *Resnover v. State* (1984), Ind., 460 N.E.2d 922, *cert. denied,* 469 U.S. 873, 105 S.Ct. 231, 83 L.Ed.2d 160. Appellant's petition for post-conviction relief was denied, which adverse decision he now appeals.

The circumstances surrounding the offenses for which appellant was convicted were detailed at length in our opinion on direct appeal, *Id.,* at 926–27, as well as in our opinion in a companion case, *Smith v. State* (1984), Ind., 465 N.E.2d 1105, 1111–

13. The facts relevant to this appeal will be discussed as they pertain to the issues raised by appellant.

Appellant filed his post-conviction petition on October 10, 1984. After conducting two evidentiary hearings, the trial court denied the petition on July 19, 1985. Six months later, appellant filed a "Verified Motion for Relief From Judgment" in which he asked the court to set aside its judgment on his petition for purposes of a hearing and the consideration of additional evidence. That motion was also denied. Pursuant to a request by appellant, this Court consolidated the appeal from the denial of the post-conviction petition and the appeal from the denial of the motion for relief from judgment.

Having failed to carry his burden of proof in the trial court, appellant is in the position of one contesting a negative judgment. Only if the evidence is without conflict and leads to but one conclusion, and the trial court reached an opposite conclusion, will we reverse that judgment as being contrary to law. *Dillon v. State* (1986), Ind., 492 N.E.2d 661; *Young v. State* (1984), Ind., 470 N.E.2d 70.

Initially, it should be noted that appellant has presented a number of allegations of error in this appeal which were either presented in his direct appeal or were available to him at that time. Issues raised and considered on direct appeal are not to be re-litigated in post-conviction proceedings. *Douglas v. State* (1986), Ind., 490 N.E.2d 270. Similarly, questions which could have been presented are deemed waived in the post-conviction process, as the remedy of post-conviction relief is not a substitute for direct appeal. Ind.R.P.C.R. 1, § 1(b); *Tope v. State* (1985) Ind., 477 N.E.2d 873; *Bailey v. State* (1985), Ind., 472 N.E.2d 1260. Although appellant has raised these allegations within the purview of Ind.R.P.C.R. 1, § 1(a), particularly in regard to his allegation that he was denied effective assistance of trial counsel, we are not compelled to address those issues previously addressed or available to appellant on direct appeal. *See Bailey, supra,* at 1262–63.

Appellant contends that a number of alleged acts and omissions of his trial and appellate counsel denied him the right to effective assistance of counsel in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and art. 1, § 13 of the Indiana Constitution.

In addressing an allegation of ineffective assistance of counsel, this Court indulges a strong presumption that counsel rendered reasonably effective assistance and will not speculate as to what may have been the most advantageous strategy in a particular case. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Elliott v. State* (1984), Ind., 465 N.E.2d 707. The defendant must show both that counsel's performance fell below an objective standard of reasonableness and that counsel's errors and omissions were so serious as to deprive him of a fair trial. *Strickland, supra.*

Appellant argues that an individualized consideration of the appropriateness of his death sentence was frustrated by the unreasonable omissions of trial and appellate counsel. Those alleged omissions were trial counsel's failure to "distance" appellant from his codefendant, to object to certain jury instructions and to present an effective penalty phase defense, and appellate counsel's failure to file a reply brief to rebut misstatements of fact in the State's brief.

The premise underlying appellant's argument is that "[i]n the frenzied atmosphere that pervaded the trial in this case, a simple and undeniable fact was lost", namely that he "did not kill" the victim, Indianapolis Police Sergeant Jack Ohrberg. He asserts that this Court on direct appeal mistakenly relied on the allegation that he was the individual who actually killed Ohrberg by stepping out onto the porch of the duplex and firing additional shots into Ohrberg after he had fallen upon being hit by gunfire originating from inside the duplex.

An individualized consideration of a defendant's culpability is a "constitutional requirement in imposing the death sentence." *Lockett v. Ohio* (1978), 438 U.S. 586, 605,

98 S.Ct. 2954, 2965, 57 L.Ed.2d 973, 990. We cannot agree with appellant, however, that neither the trial court nor this Court adequately addressed the question of his culpability separate and distinct from that of his codefendant, Tommie Smith.

Appellant relies on *Enmund v. Florida* (1982), 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140, in claiming that his role in the murder was inextricably and incorrectly linked with Smith's. In that case the Supreme Court concluded that while the defendant could be convicted on a theory of vicarious liability for the felony of robbery, in the course of which murder was committed, the focus of review of his death sentence "must be on *his* culpability, not on that of those who committed the robbery and shot the victims". *Id.,* at 798, 102 S.Ct. at 3377, 73 L.Ed.2d at 1152 (original emphasis). The Court ruled that the Eighth Amendment forbids the imposition of the death penalty on "one ... who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." *Id.,* at 797, 102 S.Ct. at 3376, 73 L.Ed.2d at 1151; *see also Cabana v. Bullock* (1986), 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704.

The applicability of *Enmund* was explicitly addressed on direct appeal. *Resnover, supra,* at 934–35. We determined that the facts in the instant case "in no way compare" to those presented in *Enmund. Id.,* at 935. After reciting a number of facts, including appellant's firing of an AR–15 automatic rifle at Ohrberg when he was attempting to enter the duplex, we found that appellant's culpability "was at least equal to that of the other men in the apartment, one or all of whom caused Ohrberg's death." *Id.* It was further found that:

"The record shows that Appellant did, in fact, take a substantial part in the shooting at police officers which resulted in Sergeant Jack Ohrberg's death. The record clearly shows that Appellant *knowingly and intentionally participated in this criminal activity which caused the death of a police officer who*

*was serving in an official capacity."* *Id.* at 936 (emphasis added).

Even assuming that it was Smith, and not appellant, who stepped out onto the porch, it cannot be argued that appellant did not either intend that a killing take place or intend that lethal force be employed. *Enmund, supra.* The determination of appellant's culpability rests not so much on an inference that he actually fired the fatal shot or shots but rather on the clearly established fact that he used deadly force to resist arrest.

In contending that his court-appointed trial counsel, Thomas Alsip, failed to "distance" him from Smith, appellant claims that Alsip failed: to argue at the end of the guilt phase that he did not kill Ohrberg; to seriously challenge the State's conspiracy theory; to use a potential defense witness; and to utilize expert assistance with regard to the State's firearms evidence.

■ We are unable to discern from appellant's argument exactly how Alsip would have been able to "distance" him from Smith. Alsip testified at the post-conviction hearing that, up to the commencement of trial, appellant insisted on allying himself with Smith and provided little, if anything, as a basis for Alsip to distinguish his participation from Smith's.

Even if Alsip had pursued the argument at the conclusion of the guilt phase that appellant "did not kill" Ohrberg, there was substantial evidence that appellant fired an automatic weapon from inside the duplex as Ohrberg was attempting to gain entrance through the barricaded front door. Contrary to appellant's assertion that the State's conspiracy theory was "improbable and insupportable", the evidence also supported the existence of a joint effort to resist arrest by use of deadly force. *See Smith, supra* at 1121.

■ As to the potential defense witness, Samara Palmer, appellant argues that she would have been available to testify that he was with her in a back room when the shooting commenced and that Alsip refused to ask her to testify to that effect. That argument is contradicted by Alsip's testimony, in which he stated that although he had no independent recollection of his conversation with Palmer and had no notes to refresh his memory, he was certain that he had talked with her prior to trial. Palmer testified at the post-conviction hearing that she did talk to Alsip about the case, although she later contradicted that testimony.

Further, it is a matter of speculation whether Palmer would have testified at trial. At the post-conviction hearing she refused to answer any questions concerning the events of December 11, 1980. Appellant has offered no reason for the necessity of expert assistance with the firearms evidence, other than in apparent support of the untenable proposition suggested at the post-conviction hearing that the cache of arms found in the duplex was to be used for hunting.

Regarding the jury instructions, upon addressing appellant's claim on direct appeal that the Indiana death penalty statute is unconstitutional because it fails to provide meaningful standards to guide the jury, we concluded that "our law adequately provided proper standards and guidelines to be followed when applying the death penalty and ... *the trial court ... directly and specifically instructed the jury as to the way in which they were to apply these standards and guidelines." Resnover, supra,* at 929 (emphasis added). That conclusion is dispositive in the post-conviction context. *Douglas, supra.*

■ The sole allegation of ineffectiveness of appellant's court-appointed appellate counsel, Dawn Duffy, is that she failed to file a reply brief, thus allowing an incorrect and unrefuted theory of his personal culpability to be adopted by this Court. Appellant argues that the facts as set out in the State's brief led this Court to the mistaken conclusion that he was the individual who actually killed Sergeant Ohrberg.

In her appellant's brief, Duffy set out facts which tended to conflict with the State's theory set out in its brief that the evidence supported a reasonable inference that appellant was the one who stepped out

onto the porch and fired two shots into the fallen Ohrberg. Duffy also raised the issue of whether the death penalty was constitutional in light of the Supreme Court's decision in *Enmund.*

Despite the factual inference proposed by the State in its brief, this Court reviewed the factual recitation in the appellant's brief as well as the record of the proceedings to determine whether the evidence supported the imposition of the death penalty. Any potential prejudice resulting from the omission of a reply brief was negated by this Court's review of the evidence regarding appellant's culpability. *See Cabana v. Bullock, supra,* 474 U.S. at —— n. 5, 106 S.Ct. at 698 n. 5, 88 L.Ed.2d at 718 n. 5.

■ Appellant argues that Alsip failed to present evidence of mitigating circumstances at the penalty phase of the trial. Although he admittedly refused to appear in court during the hearing, he claims that he never instructed Alsip to waive the presentation of evidence and further claims that Alsip failed to conduct any investigation or preparation for the penalty phase hearing.

In capital cases, the sentencer must be permitted to consider any relevant mitigating evidence. *Eddings v. Oklahoma* (1982), 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1. This is not a case, however, where appellant was precluded from presenting relevant mitigating evidence. *See Skipper v. South Carolina* (1986), 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1; *Eddings, supra.* This is an unusual situation in that appellant, along with Smith, boycotted the penalty phase hearing.

After the State rested its penalty phase case, Alsip addressed the court and stated, "my client has elected to waive his rights to be present", and "[c]onsequently I don't have any evidence to offer." Appellant's decision to boycott the hearing, despite Alsip's protestations, placed Alsip in a difficult position. He could have gone forward and presented mitigating evidence, the impact of which would unquestionably have been diminished by the fact of appellant's absence from the courtroom. Instead, Al-

sip chose to forego the presentation of evidence and later addressed the jury during final argument. We will not speculate as to the strategy chosen by Alsip. *Strickland, supra.*

The fact that the sentencer was not presented with mitigating evidence is directly attributable to appellant's decision to boycott the hearing and not to any demonstrable failure by Alsip to prepare for the hearing. Alsip testified at the post-conviction hearing that he discussed strategy with appellant on the day before the penalty phase hearing. As was stated in our opinion on Smith's direct appeal, he "should not now be entertained in his efforts to show" ineffectiveness of counsel "when he himself totally refused to be involved in the process." *Smith, supra,* at 1120. That statement is likewise applicable to appellant's claim here.

■ Appellant contends Alsip should have attempted to rebut the alleged aggravating circumstance that the victim was a law enforcement officer acting in the course of duty, Ind. Code § 35–50–2–9(b)(6)(i). Any attempt by Alsip to do so would have been unavailing as both the trial court and this Court specifically found that appellant knowingly and intentionally participated in the murder of a police officer who was performing his official duty. *Resnover, supra,* at 936.

■ Appellant's final allegation of ineffective assistance of counsel is that Alsip failed to protect his Sixth Amendment rights of confrontation and cross-examination by not objecting to the admission of extrajudicial statements made by codefendant Smith.

The State's final witness was a newspaper reporter who had interviewed Smith in jail while he was awaiting trial. He testified concerning statements made by Smith in which he admitted that he had fired shots at a figure attempting to enter the front door of the duplex on the morning in question. Appellant argues that the reporter's testimony was hearsay as to him and therefore violated the rule set out in

*Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.

Appellant's reliance on *Bruton*, in which the Supreme Court ruled that the petitioner's right of cross-examination was violated by the admission at trial of a non-testifying codefendant's confession inculpating the petitioner, is misplaced. The reporter's testimony was the subject of a motion in limine such that he was precluded from testifying as to what Smith may have told him concerning what any other individual may have said or done. The reporter's account of his conversation with Smith contained no reference to anything Smith related concerning appellant. No testimony excludable under *Bruton* was admitted, and Alsip in fact prevented such testimony by acquiring, and seeking enforcement of, the motion in limine.

In sum, we find that the post-conviction court correctly concluded that appellant was not denied his right to effective assistance of trial and appellate counsel. *Strickland, supra; Elliott, supra.*

■ Appellant alleges that he was denied his privilege against compelled self-incrimination when both defense counsel and the prosecution made adverse comments upon his failure to testify at the penalty phase of trial.

This allegation, which was available to appellant on direct appeal, flows from his decision to boycott the penalty phase hearing. In the presence of the jury, Alsip remarked:

"I think I may presume to say the judge is affronted by the fact that my clients are not here. I'm embarrassed by it."

He also stated:

"[N]ow I begged, I begged Gregory Resnover to come in here and beg for his life. And to tell you what happened. He's elected not to do that. That puts me in a difficult spot."

The prosecutor's closing argument included the statement, "don't reward them for turning their backs on justice."

A criminal defendant has a fundamental constitutional right to exercise his privilege against self-incrimination without adverse inference or comment at trial. *Griffin v. California* (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. We agree with the State, however, that appellant does not, and could not successfully, contend that there is a Fifth Amendment right to absent one's self from the penalty phase of a capital trial without an explanation of such absence to the jury.

As discussed above, Alsip was placed in the difficult position of having to choose whether to ignore the fact of appellant's absence or to address his absence and overtly attempt to overcome the negative impression it was likely to have on the jury. Alsip having chosen the second alternative, the prosecution properly countered by asking the jury not to reward the defendants for "turning their backs on justice".

Appellant relies on *Dooley v. State* (1979), 271 Ind. 404, 393 N.E.2d 154, in which this Court reversed a conviction because the prosecuting attorney improperly commented on the defendant's failure to testify at trial. The circumstances of the instant case are substantially different. The comments here were addressed to the absence of appellant and not to the invocation of his right to remain silent. It is inconceivable that the sudden disappearance of the defendants in the penalty phase of a capital case could be permitted to occur without an explanation to the jury.

Appellant contends the deputy prosecutor made a number of improper remarks in his closing arguments at both phases of the trial, which comments he argues were deliberate and highly prejudicial. Once again, this is an issue which was available to appellant on direct appeal. We have, nevertheless, reviewed the allegedly objectionable remarks cited by appellant and conclude that he was not subjected to prejudicial prosecutorial misconduct in the respective final arguments. *Burris v. State* (1984), Ind., 465 N.E.2d 171, *cert. denied* (1985), 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed2d 809; *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843.

Appellant contends that incomplete and erroneous jury instructions in the penalty phase of trial violated his rights under the

Eighth and Fourteenth Amendments to the United States Constitution, art. 1, §§ 12, 16 and 18 of the Indiana Constitution and Ind. Code § 35–50–2–9(e). As discussed above, this contention has previously been decided contrary to appellant's position.

■ Appellant claims the post-conviction court erred in permitting Samara Palmer to assert her Fifth Amendment privilege against self-incrimination. He contends he was denied his rights of compulsory process and due process of law because the court failed to determine whether Palmer's invocation of the privilege was justified and because the State refused to offer her use immunity.

To support his claim that Alsip was ineffective in failing to produce evidence to prove that he did not shoot Ohrberg, appellant called Palmer to show that she would have been available to testify that she was in bed with appellant in a back room when the shooting commenced. Palmer refused to answer any questions concerning the events of December 11, 1980. Upon her assertion of the Fifth Amendment privilege, the court recessed the proceedings and held an unrecorded conference with counsel, including Palmer's attorney, in chambers. No objection was made to that procedure.

Once the proceedings resumed, the initial question asked of Palmer was deemed by the court to be one which she could answer without incriminating herself. After another foundational question was asked, Palmer again invoked the privilege, and further discussion ensued. Palmer's attorney represented that she had originally been charged with murder and conspiracy and that the charges had been dismissed without prejudice. Appellant's counsel then stated he was going to ask her "about what happened and what she knows about where she was" at the time and place the shooting occurred. At that point the court began to sustain Palmer's refusals to answer such questions, noting that her answers would constitute an admission that she was present at the crime scene. After the State declined his request to grant

Palmer immunity, appellant made his offer to prove.

Citing Ind.Code § 35–37–3–1, appellant contends the court should have conducted a hearing to determine if the invocation of the privilege was justified. We have previously held, however, that the predecessor statute, Ind.Code § 35–6–3–1, existed solely for the benefit of the State. *Wallace v. State* (1981), Ind., 426 N.E.2d 34. Even if the court were required to conduct a hearing for the benefit of appellant, from the record made available to us it is apparent that the court permitted extensive discussion and made a particularized inquiry into the propriety of Palmer's assertion of the privilege.

■ In *Arnold v. State* (1984), Ind., 460 N.E.2d 494, this Court determined that a due process claim similar to appellant's was in actuality an equal protection claim, and rejected the contention that the State's ability to request immunity for a witness was a denial of equal protection. The State has the responsibility of prosecuting crimes and in order to meet that responsibility the State, and not a defendant, must have the authority to grant immunity. *Id.*, at 497; *see Walters v. State* (1979), 271 Ind. 598, 394 N.E.2d 154. Neither the State nor the court was compelled to grant use immunity to Palmer. Under these circumstances, the post-conviction court did not err in sustaining the witness's invocation of her Fifth Amendment right.

■ Appellant contends the post-conviction court erred in denying his request to reopen the post-conviction relief proceedings to consider additional evidence, thereby denying him a full and fair hearing on his petition.

In moving the court to grant him equitable relief, appellant claimed that evidence had come to light at Smith's post-conviction relief hearing which refuted any testimony or argument that anyone leaned out of the duplex and fired at Ohrberg at close range. The crux of appellant's argument was that testimony was adduced at Smith's hearing which showed that it was "impossible for the wounds in Ohrberg's body to have been inflicted while he lay on

the porch" and that the State "knew or should have known that their claim that Smith shot Ohrberg execution-style was false".

The "evidence" presented to the court by appellant was an affidavit submitted by counsel for Smith. In denying appellant's request for equitable relief, the court found that:

"The evidence summarized in the affidavit of co-counsel is basically a summary of the testimony of certain witnesses at the trial in chief who were at the residence at the time when the police officer, Ohrberg, was shot. In addition, the affidavit contains a summary of the testimony by a forensic pathologist who is of the opinion that the version of events at the time of the shooting given by one of the witnesses could not have been correct."

Thus the purported additional evidence, with the exception of the summary of the pathologist's testimony, was gleaned from pretrial statements and testimony given at appellant's trial. We agree with the State that appellant's argument is actually a new defense theory on the sufficiency of the evidence based on inferences drawn from selected use of trial testimony. The court did not err in denying appellant's motion to reopen the post-conviction proceedings.

Appellant argues that he was denied due process of law when he was subjected to Indiana death penalty procedures, including the "death qualification" of the jury, without a determination of probable cause to believe a necessary aggravating circumstance could be supported by the evidence available to the prosecution.

This argument was presented, and rejected, on direct appeal. *Resnover, supra,* at 929. Appellant nevertheless argues that in light of the recent case of *Lockhart v. McCree* (1986), 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137, this Court's rationale, that the degree of prosecutorial discretion is tempered by other procedures insuring fairness in capital trials, is undermined. We are unable to discern the applicability of that case, in which it was held that the "death qualification" of a jury does not violate the fair cross-section requirement of the Sixth Amendment. *See Hammers v. State* (1987), Ind., 502 N.E.2d 1339. *McCree* neither undermines our previous rationale nor augments the argument which appellant has reiterated in this appeal.

 Appellant contends that the execution of his death sentence, without a determination of what role racial discrimination may have played in his prosecution and sentencing, would constitute cruel and unusual punishment.

The post-conviction petition filed by appellant alleged that his sentence was imposed pursuant to a discriminatory pattern and practice applied against minority defendants accused of killing caucasians. On appeal, while conceding that there is no evidence whatsoever to support his allegation of a pattern of racial discrimination in death penalty prosecutions in Indiana, appellant argues that studies have been conducted in other jurisdictions which demonstrate "gross differences" in the treatment of potential capital offenders by race of offender and victim, independent of felony-related aggravating circumstances.

The studies conducted in other jurisdictions are of course inapplicable to the issue of whether race is being used as a factor in capital sentencing in Indiana. There is no evidence to show that race was intentionally used as a factor in appellant's sentencing. Appellant further argues that until a study is conducted in this state, his execution would constitute cruel and unusual punishment as well as a violation of his equal protection and due process rights. That argument is premised on speculation and fails to provide this Court with a basis from which to conclude that the execution of appellant's sentence would be a violation of either the Eighth or Fourteenth Amendments.

 Appellant contends his sentence was imposed by a judge who was biased and prejudiced against him. Although he did not request a change of judge and did not raise this issue on direct appeal, appellant now asserts that the judge's remarks

concerning his decision to boycott the penalty phase hearing as well as the denial of a number of *pro se* motions evidence such a degree of bias that the judge should not have sentenced him.

The record must show actual bias and prejudice against the defendant to support a claim of judicial bias. *Thomas v. State* (1985), Ind., 486 N.E.2d 531. "Adverse rulings and findings by a trial judge are not sufficient reasons to believe the judge has a personal bias or prejudice." *Id.,* at 533. Clear bias or prejudice exists only where there is an undisputed claim or where the judge has expressed an opinion on the merits of the controversy before him. *Wallace v. State* (1985), Ind., 486 N.E.2d 445, *cert. denied* (1986), — U.S. —, 106 S.Ct. 3311, 92 L.Ed.2d 723.

The trial judge here commented that appellant's decision to absent himself from the hearing was the "ultimate affront to the law" and that "what we have seen here in court today is a black and shameful day ... [i]n the law." The judge's comments, while unnecessary, were made outside the presence of the jury. They reflect his frustration with the defendants' decision to boycott the hearing and do not constitute an opinion on the merits of the case. *Id.* The adverse rulings on appellant's numerous *pro se* motions are also insufficient to support appellant's claim of judicial bias. *Thomas, supra.*

The final issue raised by appellant is whether he was denied due process of law as a result of further instances of prosecutorial misconduct.

Following counsel's summation at the post-conviction hearing, appellant personally addressed the court and claimed that the prosecutor had a conflict of interest resulting from his publicly stated belief that he was the target of a plan by appellant to assassinate him and that the prosecution gained the testimony of a key State's witness by deliberately violating Ind.Code §§ 35-5-6-4 and 5 (repealed and recodified at Ind.Code §§ 35-35-3-5 and 6).

Appellant concedes that there is no evidence, other than his allegations made in open court, to substantiate his claim. We will not address appellant's unsubstantiated claim, as this Court will not consider an allegation for which there is no evidence in the record. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, *cert. denied* (1986), — U.S. —, 106 S.Ct. 1241, 89 L.Ed.2d 349.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.