**Tommie J. SMITH, Appellant**
**(Petitioner below),**

v.

**STATE of Indiana, Appellee**
**(Respondent below).**

No. 49S00–8610–PC918.

Supreme Court of Indiana.

Dec. 16, 1987.

F. Thomas Schornhorst, Sp. Deputy Public Defender, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Tommie J. Smith appeals from the denial of his Amended Petition for Post–Conviction Relief. Smith was convicted, as was his co-defendant, Gregory Resnover, of murder and conspiracy to commit murder in the shooting death of Indianapolis policeman Jack Ohrberg. On the murder charge, Smith and Resnover were both sentenced to death.

The two men pursued separate appeals. Resnover's conviction and sentence were upheld by this Court in *Resnover v. State* (1984), Ind., 460 N.E.2d 922, *cert. denied*, 469 U.S. 873, 105 S.Ct. 231, 83 L.Ed.2d 160. Resnover pursued a petition for post-conviction relief, which was denied, and an appeal therefrom, which affirmed the denial. *Resnover v. State* (1987), Ind., 507 N.E.2d 1382.

Smith's convictions and sentences were also affirmed in his direct appeal. *Smith v. State* (1984), Ind., 465 N.E.2d 1105, *reh. denied*. Smith pursued a petition for post-conviction relief, which was denied. He now appeals that denial, raising the following issues for our review:

1. effective assistance of trial and appellate counsel;

2. alleged violation of the right to confrontation;

3. sufficiency of the evidence to support the murder conviction;

4. sufficiency of the evidence to support the conspiracy conviction;

5. alleged prejudice resulting from references to Smith's decision to absent himself from the penalty hearing;

6. propriety of the State's closing arguments;

7. alleged failure to find a requisite aggravating circumstance;

8. propriety of vesting the prosecutor with discretion to pursue a death penalty charge.

▪▪▪ A post-conviction action under Ind.R.P.C. 1 is a special quasi-civil remedy whereby a party can present an error which, for various reasons, was not available or known at the time of the original trial or appeal. *Mato v. State* (1985), Ind., 478 N.E.2d 57, 60. As such, the petitioner in a post-conviction proceeding bears the burden to prove any grounds for relief by a preponderance of the evidence. The judge who presides over the post-conviction hearing possesses exclusive authority to weigh the evidence and determine the credibility of the witnesses. The reviewing court will therefore not set aside the trial court's ruling on a post-conviction petition unless the evidence is without conflict and leads solely to a result different from that reached by the trial court. *Id.*

The evidence adduced at trial showed that at approximately 3:00 a.m. on December 11, 1980, Indianapolis Police Sergeant Jack Ohrberg met Sergeant Lewis J. Christ to serve an arrest warrant on individuals believed to be at 3544 North Oxford Street in Indianapolis. Ohrberg was in street clothing. Ohrberg and Christ were joined by four officers before arriving at the duplex at approximately 5:30 a.m. With Officers Schnieder and Harvey standing watch in the rear, Ohrberg, Christ, and Officers Ferguson and Foreman proceeded to the porch and front door. Ohrberg knocked loudly several times and identified himself as a police officer. Receiving no response, Ohrberg and Ferguson went to the adjacent half of the duplex, and learned from the tenant that she had heard movement in the adjoining half earlier in the night.

Ohrberg returned and again pounded on the front door, announcing himself as a police officer. When no response or movement was heard from within, Ohrberg assumed a crouched position and started to use his right shoulder to batter the door which, after a few hits, began to open. Ohrberg continued to hit the door. His body was partially inside the residence. Foreman and Christ saw furniture blocking the door. Foreman saw a burst of muzzle flash from inside and heard two or three shots in quick succession, then a pause for two seconds and then another rapid burst of fire. The simultaneous muzzle blasts came from two separate locations approximately eight to ten feet apart. Christ also heard the shots from inside the residence. Ferguson's testimony paralleled that of Foreman and Christ.

Ohrberg fired his gun into the house. Ohrberg then stepped back and to the left (south) on the porch, telling the other officers he had been shot. Ohrberg sank to his knees and collapsed on the porch. He lay at an angle to the doorway, head toward the house and feet toward the street. Foreman recalled Ohrberg had fallen forward and the majority of his body was at a 45 degree angle to the house or the street, with his head up very close to the window and his body extending outward, his feet out by the front end of the porch. At the post-conviction hearing Christ said Ohrberg fell to the south of the doorway with his head to the southwest on his stomach or his left side. His head was under the window to the south of the doorway.

Christ was standing to the right (north) of Ohrberg when Ohrberg was shot. As Ohrberg fell, Christ left the porch and retreated to the north. Taking cover, Christ saw a person with an "afro" and a rifle emerge from the doorway onto the porch and fire at least two additional shots toward Ohrberg. Shots were also being fired from within the residence. Christ fired two shots at the figure in the door-

way, and the man retreated inside. Ferguson was to Ohrberg's left (south) when Ohrberg was shot. Ferguson retreated to the south edge of the porch. He also saw the person in the doorway, holding a rifle in a "hip position" while standing over Ohrberg and fire his rifle right and left. He did not observe shots striking Ohrberg. Ferguson testified he could see the muzzle flash as the rifle was fired. Ferguson fired at the gunman and then ran around the corner of the house where gunfire continued to be directed at him.

Soon Gregory Resnover called to Christ that he wanted to talk and that Smith had been wounded. Negotiations proceeded, and after a few minutes, Gregory and Earl Resnover tossed weapons onto the porch and surrendered. Earl Resnover's billfold contained Ohrberg's business card. Smith was found on the living room floor. Next to Smith was a rifle and a damaged ammunition clip with a bullet hole piercing the clip from front to back. Ohrberg died of three gunshot wounds. Fragments of one bullet recovered at autopsy showed it was fired from the rifle found next to Smith.

A neighbor in the adjoining duplex said that before the shooting started she heard someone shout that it was the police and heard noise which may have been the chair being moved to barricade the door. This Court found that the facts adduced at trial show that the men inside 3544 North Oxford knew that the men at their door were police officers when they commenced firing on them. Further, Earl and Gregory Resnover had previously met Ohrberg who told them that his police investigation would likely involve them. Ohrberg's superior testified that Ohrberg was acting in the course of his duty as a police officer.

## I

■ Smith claims he did not receive effective assistance of counsel at trial. The issues raised here are *res judicata* because this Court found on direct appeal that Smith did not receive inadequate representation. *Smith*, 465 N.E.2d at 1117–20. In a lengthy discussion, this Court concluded "the representation of counsel here was professional and more than adequate. Defendant was well prepared, well aware of all the facts of the case, acquired discovery, cross-examined witnesses, and vigorously tried the lawsuit." *Smith*, 465 N.E.2d at 1120.

■ Smith further claims he was denied effective assistance of counsel on direct appeal, and claims he is entitled to a new appeal *de novo*. The effectiveness of appellate counsel's representation is judged using the same standard as is applied to trial counsel. *Mato*, 478 N.E.2d at 62. To show ineffective counsel, Smith must first overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and show that his attorney's assistance was not reasonably effective. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh. denied* (1984), 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291, 1294. Second, Smith must show he was prejudiced. He must show that but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* The post-conviction court concluded counsel was not ineffective and there was a fair consideration of the issues on appeal.

■ Smith retained Stephen Wolfe to appeal his convictions and death sentence. Smith's case was the first criminal appeal Wolfe handled as a lawyer. Smith notes the inexperience of his appellate counsel. However, he fails to demonstrate that such inexperience was detrimental to the result, except to imply that this inexperience may have contributed to counsel's reluctance to omit issues. Isolated poor strategy, inexperience, or bad tactics do not necessarily constitute ineffective assistance. *Ingram v. State* (1987), Ind., 508 N.E.2d 805, 808; *Van Evey v. State* (1986), Ind., 499 N.E.2d 245, 247.

■ Smith claims the 796–page brief filed on direct appeal is *prima facie* sufficient to overcome the presumption that counsel's conduct falls within the wide range of reasonable professional assist-

ance. Smith attacks the length of his appellate brief, the large number of issues raised, and the election of Wolfe to summarize each witness's testimony in the Statement of Facts. The criticisms raised are stylistic questions with no demonstration of harm to Smith as a result. As the brief sufficiently enabled this Court to reach the issues, it will not support this claim of ineffective assistance. *See Ingram*, 508 N.E.2d at 808. Smith does not demonstrate any issues to be raised on an appeal *de novo* that are omitted from the current brief, and which, as a result, cannot be determined in this post-conviction appeal. Smith has not shown a failure of his appellate counsel to perform within the wide norms of reasonable professional conduct, and has shown no prejudice.

## II

Smith claims the admission of statements attributed to co-defendant Gregory Resnover denied him his right to confront and cross-examine witnesses against him. He asserts the use of the statements without adequate redaction of material relating to him was fundamental error and caused substantial harm. The statements at issue are (1) Resnover's post-arrest statement to his brother Earl, which was overheard by the police van driver, "Beautiful shot. Blowed him away," followed by "laughing and cutting up;" (2) Resnover's statement to a jailhouse informant on the day of the shooting in which Resnover acknowledged that he knew the police were at the door and that he fired shots at a person coming through the door; (3) Resnover's later statements to reporter Scott Miley which contain direct references to Smith. Gregory Resnover did not testify at trial. The trial court granted Smith's motion *in limine* prohibiting direct reference to Smith in the three statements. The statements were admitted against Resnover only. No jury instructions limiting the use of the evidence to Resnover were requested.

■ Smith argues the admission of these statements violates his right of confrontation. A defendant is deprived of his right of confrontation when a non-testify-

ing co-defendant's confession, which on its face incriminates the defendant, is admitted at their joint trial. *Bruton v. State* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476; *Carter v. State* (1977), 266 Ind. 140, 143, 361 N.E.2d 145, 147. The United States Supreme Court has declined to extend the *Bruton* rule to apply beyond facially incriminating declarations. *Richardson v. Marsh* (1987), —— U.S. ——, 107 S.Ct. 1702, 95 L.Ed.2d 176. Thus, this Court must consider the content of the statements. First, Resnover's "Beautiful shot" remark does not refer to Smith. It may have been meant to be self-congratulatory, and refutes the claim that shooting the officer was a tragic error resulting from not understanding that the persons entering the house were police officers. Second, the jailhouse informant made no mention of Smith. He described only what Resnover said he did, and that Resnover told him he knew it was the police at the door. Third, reporter Miley did mention Smith. However, he merely quoted Resnover in establishing that Smith was present in the front room and was wounded and that Smith asked Resnover to get the police off the porch. Miley's testimony does not show that Smith knew the men on the porch were police officers before the shooting started. The content of the statements do not facially incriminate Smith and thus, do not violate *Bruton*.

■ Further, reporter Miley's references to Smith do not violate *Bruton* because Smith made similar statements to Miley. Resnover told Miley he was awakened by gunfire, went down the hallway and saw Smith leaning against the kitchen wall. Smith was wounded. Resnover picked up a gun and fired some shots toward the front of the house. He saw some police cars pulling up and went to the back of the house. During cross-examination, Miley testified Resnover said he fired in response to something Smith said. Smith, in a separate interview, admitted to Miley that he fired shots at a figure attempting to enter the front door of the duplex. Since Smith's own properly admitted statement confessed to firing at a figure entering the front

door, there was no harmful result in the admission of the Resnover statement. Further, on Smith's direct appeal this Court observed the record shows that the witnesses' testimony was directed toward Gregory Resnover only and did not involve Smith in any manner. *Smith*, 465 N.E.2d at 1121.

■ Smith complains it was fundamental error at trial for the court not to admonish the jury nor give the jury an instruction limiting the applicability of the statements to Resnover. This contention is not presented in the post-conviction petition. Smith's petition claimed only that the statements, due to their content, were objectionable. Issues not raised in the post-conviction petition are waived. *Howard v. State* (1984), Ind., 467 N.E.2d 1, 2.

■ Smith claims the trial judge was obliged, *sua sponte*, to order a severance of defendants once the nature of Resnover's statements became manifest. As this Court noted in Smith's direct appeal, since the statements did not unduly prejudice Smith, severance of the causes was not necessary. *Smith*, 465 N.E.2d at 1121. It was proper for Smith to be tried jointly with Gregory Resnover and further to have presented to the same jury in the same trial both the charges of murder and conspiracy to commit murder. *Id.*

### III

Smith asserts the evidence is insufficient to support his murder conviction because the physical evidence is irreconcilable with the police testimony. He claims that the evidence of the path of the bullets in Ohrberg's body and the police testimony that Ohrberg fell to his left and lay with his left side away from the shooter when the additional shots were fired, is incompatible with the State's theory that a person appeared in the doorway and shot his weapon at Ohrberg as he lay on the porch. When confronted with this inconsistency at the post-conviction hearing, the State demonstrated that all three wounds could have been inflicted at the time Ohrberg was in the doorway before he fell to the porch. Smith argues that had the jury been in-

formed of this theory, the jury would have considered his claims of self-defense and the mitigating factor of "sudden heat".

A court reviewing the jury's decision will not judge the credibility of testimony nor weigh the evidence. Rather, the reviewing court considers only the evidence most favorable to the State, together with all the reasonable inferences to be drawn therefrom. The judgment is entitled to stand if there is any evidence of probative value which, together with all reasonable inferences, supports its determination. The jury has the discretion to believe whomever they choose to believe. *Lisenby v. State* (1986), Ind., 493 N.E.2d 780, 782; *Watkins v. State* (1986), Ind., 493 N.E.2d 446, 447.

■ Smith argues the State had a duty to disclose to the jury the discrepancy between the physical evidence and the police testimony and to correct the false impression with which the jury had been left, citing *Garland v. State* (1983), Ind., 444 N.E.2d 1180, 1182; *Newman v. State* (1975), 263 Ind. 569, 573–74, 334 N.E.2d 684, 686–88. These cases show the State has a duty to disclose any rewards promised to a witness for testifying and must not allow false evidence to go uncorrected when it appears. Here, there is no showing that the State misrepresented evidence to the jury.

Smith's contention treats the physical evidence as conclusively disproving the State's theory and suggests that the evidence is so obviously inconsistent with the State's theory that the State acted improperly. This claim is merely an interpretation of selected evidence in the light most favorable to Smith. Resnover, in his post-conviction case, also pursued an interpretation of the evidence which, it was claimed, showed it was impossible for the wounds in Ohrberg's body to have been inflicted while he lay on the porch. This Court found the argument was actually "a new defense theory on the sufficiency of the evidence based on inferences drawn from selected use of trial testimony" and that it was not error to deny a motion for relief based on

this alleged inconsistency. *See Resnover*, 507 N.E.2d at 1389–90.

 Furthermore, Smith's conviction does not depend on showing that he emerged on the porch and shot Ohrberg as he lay there. The evidence here supports the inference that the people in the duplex knew policemen were at the door. The officers knocked more than once and said they were police officers. The neighbor heard shouts that it was the police, and the noise of things being moved next door. The people in the front room starting shooting as soon as the police opened the door. Smith was one of the people in the front room. Ohrberg was clearly shot by a person from inside the house. Officer Foreman testified there were muzzle blasts from two locations within the front room, separated by a distance of some feet. Ohrberg managed to return fire, and Smith was wounded. Perhaps Smith was wounded and unable to go out on the porch and shoot. Perhaps the figure on the porch somehow managed to miss Ohrberg as he lay there, and all Ohrberg's wounds were incurred in the initial shooting. The jury reasonably inferred from the evidence that Smith was one of the persons in the front room shooting at Ohrberg, and that Smith intended to kill Ohrberg or acted in support of the plan of others to kill Ohrberg to the extent that Smith acted in these crimes with reckless disregard of the possible consequence of loss of human life.

## IV

Smith challenges the evidence supporting his conviction for conspiracy, claiming the State's theory of conspiracy is merely a device concocted to gain introduction of evidence that would otherwise have been inadmissible, and thus increase the chances of convicting Smith of murder and of obtaining the death penalty. Smith asserts the evidence is equivocal as to any agreement that may have been reached. However, this issue was considered and disposed of adversely to Smith on his direct appeal. *Smith*, 465 N.E.2d at 1124–25. Issues raised and disposed of adversely to a defendant on direct appeal are *res judicata*

and are not available for review on appeal from a denial of post-conviction relief. *Young v. State* (1985), Ind., 482 N.E.2d 246, 252.

 The State was required to prove beyond a reasonable doubt that Smith, with the intent to murder Ohrberg, agreed with others to murder Ohrberg, and that an overt act in furtherance of the agreement was performed. Ind.Code Ann. § 35–41–5–2 (Burns 1985). The existence of the agreement may be inferred from the conduct of the parties or proved by circumstantial evidence, but not from the commission of the criminal act alone. *Woods v. State* (1980), 274 Ind. 624, 626, 413 N.E.2d 572, 573. "Concurrence of sentiment and cooperative conduct in the criminal enterprise are the essential ingredients." *Woods*, 274 Ind. at 633, 413 N.E.2d at 577. Here, five persons were gathered in an apartment with several guns, ammunition and related paraphernalia. One of the persons had in his wallet Ohrberg's business card with Ohrberg's wife's name and telephone number handwritten on the back. A piece of furniture was placed in front of the door. Being aware that a policeman was entering the building, Smith fired on Ohrberg as the officer tried to enter the house. From this evidence the jury could reasonably infer a conspiracy to murder Ohrberg.

## V

After conviction, against the advice of counsel, Smith and Resnover decided not to attend the sentencing phase of the trial. A hearing was held to determine the voluntariness of Smith's choice. The judge characterized the waiver as "the ultimate affront to the law," and said, "what we have seen here in court today is a black and shameful day. In the law. For all those people who have come before us to get this law-given sacred right." This Court has already noted that the trial judge's remarks were made outside the presence of the jury and did not prejudice the jury. *Smith*, 465 N.E.2d at 1124.

 Smith argues the trial court had the obligation to, *sua sponte*, instruct the

jury that he had a constitutional right to be absent and that no adverse inference could be drawn from that fact, citing *Barnes v. State* (1982), Ind., 435 N.E.2d 235, 240–41. In *Barnes*, this Court recognized the correct action for a judge to take in such circumstances. However, *Barnes* was handed down after *Smith.* Further, the defendant in *Barnes* claimed it was error for the trial court to give such an instruction, and that such an instruction was equivalent to improper comment on the defendant's decision not to testify. Thus, *Barnes* does not establish that a trial court must *sua sponte* instruct a jury that the defendant has the right to be absent and that his absence should not be held against him.

Smith claims he was prejudiced by remarks made by the court and counsel concerning his absence. In the State's opening statement, the prosecutor acknowledged that the defendants had a right not to be present, but said nothing about the jury's duty not to draw adverse inferences from their absence. Prior to closing arguments, the judge told the jury that "the defendants are not present by choice but are present by their attorneys...." During closing argument, the prosecutor again took note of the absence of the defendants, remarking, "Let's put the defendants back in the courtroom, don't punish them for their actions, but don't reward them for turning their backs on justice." Also during closing argument, Gregory Resnover's counsel remarked, "I think I may be presumed to say the judge is affronted by the fact that my clients are not here. I am embarrassed by it." These remarks of the court and counsel were reviewed by this Court and found not to be prejudicial. *Resnover*, 507 N.E.2d at 1382.

Smith's defense counsel also noted Smith's absence. In closing argument, Smith's defense counsel remarked "... due to the incredible stupidity and demoralization on the part of ... Mr. Smith, over what happened yesterday, you haven't had the benefit of hearing him speak. To tell his story. At least hearing what he has to say. At least hearing his

voice." He then pled with the jury not to allow that absence to be the basis for favoring the death penalty. The decision what to do after Smith absented himself was a strategic dilemma for counsel. Defense counsel's strategy seems to have been to characterize the absence as unwise, and thus humanize the decision. This Court does not second guess counsel in choices of strategy. There is no Fifth Amendment right to absent one's self from the penalty phase of a capital trial without an explanation of such absence to the jury. *Resnover*, 507 N.E.2d at 1382. The remarks made by counsel were strategic decisions within the scope of the professional performance expected of counsel.

## VI

Smith claims that several remarks made during closing argument and the sentencing phase were improper, placing Smith in a position of grave peril and denying him due process of law. In reviewing a charge of prosecutorial misconduct, this Court first determines whether there was misconduct by the prosecutor, and second, considers whether that misconduct under all the circumstances placed the defendant in a position of grave peril to which he should not have been subjected. This position is measured by the probable persuasive effect of any misconduct on the jury's decision and whether there were repeated instances of misconduct which would evidence a deliberate attempt to improperly prejudice the defendant. *Bixler v. State* (1984), Ind., 471 N.E.2d 1093, 1102–03, *cert. denied* (1985), 474 U.S. 834, 106 S.Ct. 106, 88 L.Ed.2d 86; *Maldonado v. State* (1976), 265 Ind. 492, 498–99, 355 N.E. 2d 843, 848. Prompt objection at trial is required as a prerequisite to appellate review. *See Burris v. State* (1984), Ind., 465 N.E.2d 171, *cert. denied* 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809. As no contemporaneous objections were made here, the issue is waived.

Smith claims that during closing argument, the State included statements of personal belief in the guilt of the accused, intimated knowledge of facts outside the

record, and misstated the evidence. The prosecutor's final argument may point out any reasonable inference from facts in evidence. Further, a prosecutor may comment on the credibility of witnesses in closing argument as long as the assertions are based on reasons which arise from the evidence. *Rhone v. State* (1986), Ind., 492 N.E.2d 1063, 1066. The prosecutor said he believed it was true Ohrberg knocked before entering and announced he was a policeman. This comment is premised on a statement that it is based on evidence in the case, not on any outside knowledge about Ohrberg. Garrison also appealed to the jury to make the conviction on the evidence only. This was not improper argument.

Smith claims that during closing argument, the State included statements of personal belief as to the lack of credibility of witnesses associated with the defendants. When the prosecutor argued that one of the witnesses was lying, he was arguing factual reasons based on evidence and circumstances properly before the court and in the record to reach those conclusions. Thus, he was not making personal comment on their credibility.

Smith claims the State's final argument was calculated to inflame the passions of the jury through appeals to racial prejudice. Smith proposes the comment that Earl Resnover was "stuck, by his own stupidity" in a bedroom is an "indirect, but unmistakable reference to the race of the Defendants". He makes the same charge regarding a reference to the persons who simply carry out orders as "these privates," and the group of persons as "the boys". These terms are used as general slang, not a racial comment. Smith professes to see a racial reference to the remark "this one and that one . . .", referring to argument that there was a conspiracy between this defendant and that defendant. These remarks are not inherently racial comments. Two other phrases are discussed by Smith. First, the prosecutor characterized the testimony of a black defense witness as "shucking and jiving on the stand." The term is clearly of black

origin, used to mean to talk in a patently misleading or evasive manner. Its use reminds the jury of the untrustworthy appearance of this witness. Second, the prosecutor said Smith "had to play Superfly" and shoot Ohrberg where he lay. Despite the racial content of the term "Superfly", it is not out of bounds to make such an allusion by saying Smith acted like "Superfly", either to characterize his actions by comparison with a known fictional figure, or to imply that Smith's behavior is to some extent modeled on the fictional example.

Finally, Smith asserts the State's argument during the sentencing phase of trial deprived Smith of a fair hearing. The challenged arguments concern the purpose of the death penalty, the need to impose the death penalty on the aggravating circumstance of killing a police officer, and the return of the defendants to the streets if the jury accepted their self-defense theory. Smith claims these were inflammatory and constituted appeals to anger and fear. The prosecutor's argument was devoted to showing the evidence of guilt was overwhelming. The prosecutor was not calling for a verdict premised on impermissible factors, but for one premised on the jury's belief in the evidence. Defense counsel discussed the propriety of the death penalty, and its suitability as the penalty for the murder of Ohrberg. The State merely responded with a counter-argument on the philosophical reasons for the death penalty in cases such as this. The remarks referring to the jury doing its duty did not mean that the jury was compelled to convict or to recommend the death penalty because of the death of the police officer. The remark meant the jury's duty was clear if, as the State contended, the charges had been proven.

Upon setting forth the standard of review and the statements complained of, Smith merely contends the remarks put him in grave peril. Smith fails to explain how the statements placed him in grave peril or had any persuasive effect on the jury. *See, Henderson v. State* (1986), Ind., 492 N.E.2d 20, 23. The State reminded the

jury that their decision should be made only on the basis of the facts. The prosecutor reminded the jury that as an attorney making final argument in the case, his words would not amount to giving testimony or giving facts and that he could not infer or imply to the jury that he possessed information not before them. Further, he invited the jury to go over the evidence during his argument. The prosecutor's responses were fair comment as they did not infer that he had information that was outside the evidence heard by the jury. Further, the comments were in response to statements on the same subject made by defense counsel during arguments. *Hensley v. State* (1986), Ind. 497 N.E.2d 1053, 1058, *reh. denied; Vanyo v. State* (1983), Ind., 450 N.E.2d 524, 527, *reh. denied.* Thus, the argument as a whole was not improper.

The conduct of final argument is within the sound discretion of the trial court. *Henderson*, 492 N.E.2d at 23; *Kalady v. State* (1984), Ind., 462 N.E.2d 1299, 1307. Here, the State referred to evidence which presented the issues before the jury and represented fair comment on the case. The trial court in its discretion apparently interpreted the comments in this manner. We find no reversible error. *See, Sanders v. State* (1984), Ind., 466 N.E.2d 424, 430.

## VII

■ Smith claims he was charged, convicted, and sentenced to death without a valid finding of an aggravating circumstance. The death penalty request was based on the aggravating circumstance that Ohrberg was a law enforcement officer acting in the course of duty. The trial court found "the State had proven beyond a reasonable doubt that aggravating circumstance that the victim of this murder was a law enforcement officer acting in the course of his duty." *Smith*, 465 N.E.2d at 1125. And further, the "record supports all of the findings by the trial judge ...", and "clearly shows that Smith knowingly and intentionally participated in this criminal activity knowing that Sgt. Ohrberg was acting in an official capacity as a police officer and causing the death of Sgt. Ohr-

berg while he was serving in his official capacity as a police officer." *Smith*, 465 N.E.2d at 1126. This matter is *res judicata.*

Smith claims that "course of duty" implies a requirement that an officer be engaged in the lawful exercise of his police powers at the time of the murder. Smith claims Ohrberg was not lawfully discharging his police duty because he failed to announce his purpose for demanding a response and thus, the manner in which he announced his presence was defective. Smith claims that if an officer attempting to make an arrest outside the boundaries of his jurisdiction is not acting "in the course of his duty", then Ohrberg cannot be found to be acting within the course of duty, citing *Spranger v. State* (1986), Ind., 498 N.E.2d 931, 942. However, *Spranger* upheld a death sentence for the murder of a police officer acting in the course of his duty when he attempted to effect an arrest outside the geographical limits of his arrest jurisdiction. Thus, *Spranger* does not support Smith's contention.

Ohrberg was sent to the Oxford Street duplex to execute an arrest warrant for dangerous individuals. The aggravating circumstance was found on the existence of supporting facts, including the testimony of Ohrberg's superiors that Ohrberg was on duty and serving his police function, and that the person in the neighboring unit heard persons in the other unit recognize the police were at their door. Further, witnesses testified Ohrberg announced "Police" as he pounded on Smith's door. The finding of the aggravating circumstance was proper under these facts.

Smith further claims the death sentence is invalid because the jury was not instructed the State must prove beyond a reasonable doubt that Smith knew the victim was a law enforcement officer acting in the course of duty. However, one jury instruction stated, "... Under the information ... the State must prove to you beyond a reasonable doubt that the victim of the murder, Jack R. Ohrberg, was a law enforcement officer, and that the victim was act-

ing in the course of his duty, and that the defendants knew the victim was a law enforcement officer." Thus, the jury was instructed on the aggravating circumstance.

## VIII

Smith alleges he was denied due process of law by the State's unilateral decision to invoke statutory death penalty procedures without a determination by a neutral fact finder of probable cause to believe a necessary aggravating circumstance could be supported by the evidence available to the prosecution. He claims it is impermissible to vest the prosecuting attorney with the power to determine when to pursue the death penalty in a murder case. Smith asserts this case must be reversed and remanded because the decision to seek the death penalty was not premised on fair and objectively screened criteria. This issue was disposed of by this Court in *Resnover*, 460 N.E.2d at 929. Those findings are dispositive of the issue raised here by Smith. *See Smith*, 465 N.E.2d at 1113. Thus, this issue is *res judicata.*

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.