## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 13 2018, 10:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Stephen Anderson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 13, 2018 <br><br> Court of Appeals Case No. 18A-CR-1322 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Helen W. Marchal, Judge <br><br> The Honorable Stanley Kroh, Magistrate <br><br> Trial Court Cause No. 49G15-1701-F6-3735 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Stephen Anderson (Anderson), appeals the revocation of his commitment in Community Corrections and the imposition of his previously-suspended sentence.

We affirm.

# ISSUE

Anderson presents two issues on appeal, which we restate as the following single issue: Whether the trial court revealed bias and lack of impartiality at Anderson's revocation hearing.

# FACTS AND PROCEDURAL HISTORY

On January 28, 2017, the State filed an Information, charging Anderson with Count I, residential entry, a Level 6 felony; Count II, possession of marijuana, a Class A misdemeanor; Count III, criminal mischief, a Class B misdemeanor; and Count IV, possession of paraphernalia, a Class C misdemeanor. On March 26, 2018, by agreement with the State, Anderson pleaded guilty to Counts I and III, in exchange for a dismissal of the remaining charges. The same day, the trial court sentenced Anderson to concurrent terms of two years on each Count to be served in Community Corrections.

On May 7, 2018, Community Corrections filed a notice of violation, alleging that Anderson had repeatedly violated the "Duvall Residential Center (DRC)

rules" by being disorderly at the center and for possessing "a controlled or illegal substance" on at least three occasions. (Appellant's App. Vol. II, p. 68).

[6] On May 16, 2018, the trial court conducted a revocation hearing. At the hearing, Anderson admitted to possessing illegal drugs, contrary to DRC's polices. Anderson then made the following request, "I wouldn't mind going back to Duval [sic]. I mean it's fine with me[,] but I was really hoping for like [] house arrest." (Transcript p. 8). Community Corrections maintained that Anderson's placement should be revoked since Anderson was "a security threat." (Tr. p. 12). When the trial court asked Community Corrections to clarify that statement, Community Corrections stated that Anderson was a "security risk because he ha[d] been caught" possessing drugs "on three different occasions." (Tr. p. 13). Following that argument, the trial court ordered Anderson to serve 60 days in jail, and placed Anderson on "strict compliance," *i.e.*, further violations would result in the revocation of his placement. (Tr. p. 13).

[7] While respectfully recognizing the trial court's ruling, Community Corrections argued that they had tried to sanction Anderson "in-house," but had been unsuccessful. (Tr. p. 13). Community Corrections continued to argue, "we have had difficulty controlling prohibited substances from coming into the [DRC] . . . and we have had people that are [overdosing] over there . . . [a]nd we have had to call EMS several times . . . We have had to give residents Narcan because of [them] smoking this stuff and it's becoming a risk in the facility." (Tr. p. 13).

Overlooking Community Corrections' plea of help, the trial court proceeded to admonish Anderson that any violation would result in the termination of his placement. Instead of listening to the trial court or asking for permission to talk with his attorney, Anderson immediately talked to his attorney. At that point, the trial court reconsidered its prior ruling, revoked Anderson's placement in Community Corrections, and ordered Anderson to serve his previously-suspended sentence of "295 actual days" in jail. (Tr. p. 14).

Anderson now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Anderson argues that the judge showed bias toward him at his revocation hearing. When the impartiality of a trial judge is challenged on appeal, we will presume that the judge is unbiased and unprejudiced. *Smith v. State*, 770 N.E.2d 818, 823 (Ind. 2002). "Such bias and prejudice exist only where there is an undisputed claim or where the judge expressed an opinion of the controversy over which the judge was presiding." *Id*. Adverse rulings are not sufficient of themselves to establish bias or prejudice. *Resnover v. State*, 507 N.E.2d 1382, 1391 (Ind. 1987). The mere assertion of bias or prejudice is also not enough; rather, it must be established from a judge's actual conduct that bias or prejudice "place[d] the defendant in jeopardy." *Smith*, 770 N.E.2d at 823.

In assessing a trial judge's partiality, we examine the judge's actions and demeanor while recognizing the need for latitude to run the courtroom and maintain discipline and control of the trial. *Everling v. State*, 929 N.E.2d 1281,

1288 (Ind. 2010). "Even where the court's remarks display a degree of impatience, if in the context of a particular trial they do not impart an appearance of partiality, they may be permissible to promote an orderly progression of events at trial." *Id.*

[12] To preserve a claim of judicial bias, a party must raise the issue at the trial level. *Garrett v. State*, 737 N.E.2d 388, 391 (Ind. 2000). Anderson readily concedes that he did not object at his revocation hearing, and he seeks a review of his claim under the fundamental error doctrine. *See Ruggieri v. State*, 804 N.E.2d 859, 863 (Ind. Ct. App. 2004). The doctrine of fundamental error provides "an exception to the general rule that failure to object at trial constitutes procedural default precluding consideration of the issue on appeal." *Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013). This "exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Id.* The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. *Id.*

[13] In support of his claim, Anderson argues that the trial court was punishing him for conferring with his attorney, and he argues that the "trial court inserted itself into the proceedings—whether because it felt disrespected or because it was in a hurry to get through the calendar or for some other reason. Regardless of the reason, the trial court did not act impartially." (Appellant's Br. p. 12).

[14]     Throughout the revocation hearing, Community Corrections maintained that Anderson's placement should be revoked since he could not adhere to the policies. The trial court disregarded Community Corrections' request and sanctioned Anderson to serve 60 days in jail and ordered him to return to the DRC. However, the trial court placed Anderson on strict compliance upon his return to the facility. Following that ruling, Community Corrections respectfully argued that the only reason it was seeking to revoke Anderson's placement was due to the fact that Anderson had smuggled drugs into the facility which inherently posed a risk to other residents.

[15]     The trial court disregarded Community Corrections' argument, and proceeded to admonish Anderson with further instructions: "You can't have any other previous problems. I also think Community Corrections is not going to try to work this out with you administratively." (Tr. p. 14). While issuing its order, the trial court saw Anderson talking with his lawyer and being inattentive. At that moment, the trial court changed its prior ruling and stated

> You don't seem to have any concern about anything the [c]ourt is saying so I think it is probably better that your placement there be revoked[,] and you finish this sentence in [] jail Mr. Anderson. So, your 730-day sentence will be served in [] jail. You do have 70 actual days credit plus 70 day[s] earned and that is 70 actual days plus 70 [days] earned. So, you will finish this sentence in [] jail Mr. Anderson. Your placement at Community Corrections is revoked. And so, you have 295 actual days yet to serve. This is the sentence the [c]ourt determined after considering evidence and argument[s], so you do have the right to appeal the [c]ourt's decision . . . Do you understand your appeal rights?

(Tr. p. 14).  Anderson did not respond to the trial court's question.  The following exchange between the trial court and Anderson's attorney then occurred:

> TRIAL COURT:  I don't believe this.  [] [I]s there some reason that you seem to think that Mr. Anderson has to have a conversation with you and not listen to what the [c]ourt has to say?  I don't understand what is happening here.  We are trying to get through this calendar this morning.
>
> ANDERSON'S ATTORNEY:  Your Honor. . .
>
> TRIAL COURT:  I am talking but [Anderson] and [you] don't seem to have any concern about what the [c]ourt is saying at all.
>
> ANDERSON'S ATTORNEY:  Your Honor. Mr. Anderson was indicating to me that he would, after the [c]ourt gave him the option to go back to [DRC] that he would prefer to do his time in custody.
>
> TRIAL COURT:  All right.  That seems to be the best thing.
>
> ANDERSON'S ATTORNEY:  I am trying to explain to him what that would mean.
>
> TRIAL COURT:  All right well that is what is happening Mr. Anderson . . .

(Tr. pp. 14-15).

[16]    In examining the trial court's actions and demeanor throughout the revocation proceedings, we cannot say that Anderson's right to a fair hearing was

impaired. Contrary to Anderson's assertion that the trial court was punishing him for speaking with his attorney, at no point did Anderson request for a moment to confer with his attorney. Anderson's behavior at the revocation hearing showed that he was unwilling to pay attention, which was relevant to the question of whether Anderson would adhere to a strict compliance policy upon his return to the DRC. Also, we find that the trial court was not cross with Anderson for delaying the proceedings that morning, rather, the trial court's comments reflect on its responsibility to maintain discipline and control of the proceedings, even if it's remarks displayed a degree of impatience. Moreover, we find that any allegation that the trial court was acting out of anger by issuing an adverse ruling is belied by the fact that Anderson was not keen on returning to the DRC since he preferred home detention. Also, the trial court's decision came after Community Corrections' arguments about overdoses in its facility.

[17] In light of the foregoing, we conclude that Anderson has failed to demonstrate error, let alone a fundamental error based on his allegation, that the judge who oversaw his revocation hearing was biased against him.

## CONCLUSION

[18] Based on the above, we conclude that Anderson has failed to demonstrate error, let alone a fundamental error based on his allegation, that he was prejudiced by the judge who conducted his revocation hearing.

[19] Affirmed.

Vaidik, C. J. and Kirsch, J. concur