Guy Lance RADCLIFF, Appellant,

v.

STATE of Indiana, Appellee.

No. 03S00–9008–CR–490.

Supreme Court of Indiana.

Oct. 4, 1991.

Richard T. Eppard, Columbus, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Attempted Murder, for which he received a sentence of fifty (50) years, enhanced by thirty (30) years by reason of his status as a habitual offender.

The facts are: Appellant and his wife Shirley had domestic difficulties leading to the filing of a divorce action by Shirley. Appellant blamed an acquaintance, Lillian Fury, claiming that Fury had sold cocaine

to his wife, which contributed to their difficulties.

On the morning of August 18, 1988, appellant armed himself and went to Fury's home. On the way, he stopped at a filling station and told the attendant to call the police because there was going to be a shooting. This the attendant did. Appellant entered Fury's home and stated his intent to kill her. However, upon pleading with him that she would talk to his wife about staying with him, appellant put away his gun and started to follow Fury out of the apartment.

At that time, the police arrived, and appellant ordered Fury back into the apartment. However, Fury ran down the stairs in an attempt to escape, whereupon appellant drew his gun and shot her in the left arm. Although she fell down the stairs, the police quickly carried her to safety. After being shot by the police, appellant surrendered. Following his arrest, he admitted his intent to kill Fury and vowed that he would do so in the future.

Appellant filed a motion for sanity determination and two doctors were appointed to examine him. Both doctors reported to the court that appellant talked freely and lucidly during their interview, and they could find no evidence of mental impairment other than an anti-social personality. They also indicated that he was legally sane at the time of the act and at the time of their examination.

Appellant claims he was denied a fair trial in that the court did not grant a continuance or furnish the funds to bring his wife from Wisconsin to Columbus to testify. It is his position that his wife would have testified that when she was interviewed by police, immediately after the shooting of Fury, she was under the influence of cocaine, and because she was angry at appellant, she made many statements to the police which were untrue.

■ After a hearing to determine whether appellant's wife should be brought to Indiana to testify, the trial court observed that he saw nothing her testimony would add to appellant's defense. He noted that her previous statements to the police were not in evidence, and the fact that appellant's wife had admitted she had stated several untruths to the police was testified to by Officer Gill. Under the circumstances, the judge found that appellant's wife's testimony, if she testified as appellant expected, merely would be cumulative. Based upon these observations, the judge denied the motion to produce appellant's wife.

The State raises the issue that appellant did not file a sufficient affidavit to disclose the expected testimony from his wife, which alone gave the trial court sufficient reason to deny the request, citing *Randall v. State* (1985), Ind., 474 N.E.2d 76. However, such a deficiency is not necessarily fatal and the trial court may, in its discretion, grant the request notwithstanding the absence of such an affidavit. *Montano v. State* (1984), Ind., 468 N.E.2d 1042.

■ However, on appeal, appellant must demonstrate an abuse of discretion and a harm flowing from the denial of the continuance. *McNeely v. State* (1988), Ind.App., 529 N.E.2d 1317. Although appellant's affidavit was somewhat sketchy, the statements made by counsel and by appellant at the hearing indicated that the wife would be expected to testify as stated above. Accepting this premise, we see no abuse of discretion on the part of the trial judge.

The State did not use the wife's early statements to the police nor was there any indication that her testimony, as anticipated by appellant, would contribute to his defense. The evidence in the case made it obvious that he was quite upset concerning Fury's perceived meddling in his marriage and that he acted upon that perception. He had been examined thoroughly by two doctors who found him to be legally sane. There was nothing to indicate that the wife's testimony would be anything but cumulative as found by the trial judge. We see no error here.

■■ Appellant contends the trial court erred when it refused to give him the opportunity to represent himself with his attorney serving as "standby counsel." At that time, appellant conducted himself in

such a belligerent manner as to require a finding by the trial court that he was in contempt.

The trial judge recognized that a defendant has the right to elect to represent himself. *Koehler v. State* (1986), Ind., 499 N.E.2d 196. The court gave appellant the choice of either representing himself or being represented by counsel. As pointed out by the State, there is no constitutional right to act as co-counsel in one's own defense. *Carter v. State* (1987), Ind., 512 N.E.2d 158; *Averhart v. State* (1984), Ind., 470 N.E.2d 666, *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323. In view of appellant's behavior, the trial judge acted well within his discretion in refusing appellant's request to have standby counsel during the trial of the case.

Appellant demonstrated that he would proceed as he saw fit and gave no indication of willingness to take anyone's advice. There is no question but that the potential for benefit to appellant was much greater through representation by counsel rather than through his proposed "co-counsel representation." We see no abuse of the trial court's discretion.

 Following the exchange between appellant and the court, appellant moved for a change of judge, which was denied. In this type of situation, a judge is presumed to be unbiased and unprejudiced. Were we to allow a defendant to misbehave in a courtroom, thus requiring disciplinary action by the trial judge, then to obtain a change of judge, would be to thwart the operation of the judicial system.

There is nothing in this record to indicate the judge showed any personal animosity toward appellant. In spite of appellant's insults and obscene references to the judge, the judge maintained a quiet decorum and was justified in finding appellant in contempt. Such an adverse ruling is not a sufficient reason to find bias and prejudice for the removal of the trial judge. *Thomas v. State* (1985), Ind., 486 N.E.2d 531; *Jeffers v. State* (1985), Ind., 485 N.E.2d 81; *Yager v. State* (1982), Ind., 437 N.E.2d 454.

Appellant maintains that the proof of the judge's bias is reflected in the fact that he was given the maximum possible sentence. However, given the fact appellant had stated that if given another opportunity he would kill the victim, it is not surprising that the judge gave the maximum sentence. We find nothing in this record to justify appellant's contention that the judge was biased and prejudiced against him.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

KRAHULIK, J., concurs in result.