Rodney L. COOK, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9208–CR–390.

Court of Appeals of Indiana,
Second District.

April 27, 1993.

Howard Howe, Indianapolis, for appellant-defendant.

Pamela Carter, Atty. Gen., Deana M. McIntire, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

FRIEDLANDER, Judge.

## CASE SUMMARY

Defendant-appellant Rodney Cook (Cook) appeals from his sentences for attempted murder, rape and confinement, claiming the trial judge was biased against him because she cried during the sentencing hearing.

We affirm.

## FACTS

The facts most favorable to the trial court's judgment reveal that on August 19, 1991, the victim returned to her apartment after dining with her mother. While standing at her mailbox, Cook, her neighbor, approached her and asked to borrow some salt. The victim entered her apartment and went into the kitchen for some salt. When she returned to her living room, Cook shot her in the chest.

She began screaming and wrestled with Cook. He struck her six or eight times with the butt of the revolver, and she feigned unconsciousness. Cook pulled her along the floor into another room and left for a few moments; when he returned, he removed some of the victim's clothing, engaged in sexual deviate conduct and then raped her. The victim struggled with Cook

1. Ind.Code 35–42–1–1 and Ind.Code 35–41–5–1 (1988).

2. IC 35–42–4–1 (1988).

3. IC 35–42–4–2.

and kicked him. Cook then left the apartment.

The victim crawled into her bathtub and attempted to hide. Cook returned with the gun and a pillow. He placed the pillow over her head and shot her through the pillow. The bullet hit the victim's forearm and grazed her forehead. She lunged forward in the tub when shot and held her breath until Cook left.

Cook was arrested and charged with attempted murder,[1] a class A felony, rape,[2] a class A felony, criminal deviate conduct,[3] a class A felony, confinement,[4] a class B felony, and aggravated battery,[5] a class B felony. Cook pled guilty but mentally ill to attempted murder, rape and confinement pursuant to a plea agreement.

At the sentencing hearing, the victim testified about the attack. After describing Cook's actions, the victim stated that she did not seek vengeance, because there was nothing the court could do to change the past. She said she was not interested in punishing Cook, but she wanted to be sure that Cook was imprisoned long enough before he was released so that he would be rehabilitated and not be a threat to others.

After these comments, the trial judge interrupted:

"I think it's appropriate for me to speak at this time because I know that—all of you know that I am crying and I want you to know the reason for that is because of [the victim's] forgiving nature. It is unusual, I believe, for a person who's been a victim of such a vicious crime to have such a forgiving attitude about her experiences. And I think that that reflects all the best that there is in human nature. And I want Mr. Glazier [Cook's counsel] and Mr. Cook to realize that, even though I'm emotional at this time and that I am crying, that you will have nothing to fear."

*Record* at 337–38.

After a brief recess, Cook asked the trial judge to recuse herself because he felt he

4. IC 35–42–3–3.

5. IC 35–42–2–1.5.

could not receive an impartial adjudication from her. The trial judge denied the motion. After the cross-examination of the witness and arguments by counsel, the trial court accepted Cook's guilty plea. Cook was sentenced to a forty-year term of imprisonment for attempted murder, forty years for rape, the sentences to be served consecutively, and a ten-year sentence for confinement, to be served concurrently to the other sentences, for a total term of imprisonment of eighty years.

The trial judge articulated three aggravating circumstances to support her decision: Cook's use of subterfuge to get into a position to harm the victim; his return after the rape with the specific intent to kill the victim to evade detection and the use of the pillow to muffle the sound of the gunshot to evade detection; and her determination that Cook was in need of corrective treatment that could be found only in a prison setting. The trial judge later amended the abstract of the judgment to show that she found Cook's youth and remorse to be mitigating factors, but that the aggravating factors outweighed those mitigating circumstances.

### ISSUES

1. Whether the trial judge erred in failing to recuse herself because of the appearance of partiality?

2. Whether the trial judge demonstrated actual bias against Cook?

3. Whether the trial judge improperly balanced the aggravating and mitigating circumstances when she sentenced Cook?

### DECISION

*ISSUE ONE*—Should the trial judge have recused herself because of the appearance of partiality?

*PARTIES' CONTENTIONS*—Cook argues that the Code of Judicial Conduct requires the trial judge to disqualify herself because

her impartiality could reasonably be questioned. The State responds that the trial judge's actions would not lead a reasonable person to believe she was partial and that she did not err when she denied Cook's motion to recuse herself.

*CONCLUSION*—The trial judge was not required to recuse herself because of the appearance of partiality.

Cook first raises the possibility that the trial judge may have violated Ind. Rules of Procedure, Code of Judicial Conduct, Canon 3(C)(1),[6] which provided:

"A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party...."

Such a claim, however, is not properly before this court. It is the exclusive province of the Supreme Court to review alleged violations of the Code of Judicial Conduct. Ind. *Const.* Art. 7 § 4; Ind. Rules of Procedure, Admission and Discipline Rule 23 § 1; *see also Matter of Young* (1988), Ind., 522 N.E.2d 386. So the trial judge's action in relation to the Code of Judicial Conduct is not a consideration for this court.

With respect to Cook's assertion that the appearance of partiality required the trial judge to recuse herself, the Supreme Court has held that, while a trial judge has the discretion to disqualify himself or herself whenever any semblance of judicial bias or prejudice arises, disqualification is not required unless *actual* prejudice or bias exists. *Smith v. State* (1985), Ind., 477 N.E.2d 857. *See also Newville v. State* (1991), Ind.App., 566 N.E.2d 567, *trans. denied.* Therefore, even if we agreed with Cook that the trial judge's crying might support an allegation of the appearance of partiality, we nonetheless reject Cook's claim that the mere appear-

---

**6.** The Code of Judicial Conduct was amended effective March 1, 1993, and the former Canon 3(C)(1) is now Canon 3(E)(1), which provides: "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality

might reasonably be questioned, including but not limited to instances where:
(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer...."

ance of partiality requires the recusal of the trial judge.

*ISSUE TWO*—Was the trial judge actually biased against Cook?

*PARTIES' CONTENTIONS*—Cook next alleges that the trial judge's crying constituted actual bias against him, so she should have recused herself because of the existence of actual bias or prejudice. The State replies that the tears shed by the trial judge did not demonstrate that she was biased or prejudiced against Cook.

*CONCLUSION*—The trial judge was not biased.

■■■ A judge is presumed unbiased and unprejudiced, and to rebut the presumption, the defendant must establish from the judge's conduct actual bias or prejudice which places the defendant in jeopardy. Such bias or prejudice exists only where there is an undisputed claim or where the judge has expressed an opinion on the merits of the pending controversy. *Smith v. State* (1989), Ind., 535 N.E.2d 1155; *Resnover v. State* (1987), Ind., 507 N.E.2d 1382, *cert. denied,* 484 U.S. 1036, 108 S.Ct. 762, 98 L.Ed.2d 779; *Wallace v. State* (1985), Ind., 486 N.E.2d 445, *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723. Adverse rulings or the imposition of the maximum possible sentence do not support a claim of bias. *Radcliff v. State* (1991), Ind., 579 N.E.2d 71; *Resnover, supra.*

■■■ We first conclude that the mere fact a judge has an emotional reaction does not demonstrate that the judge is biased or prejudiced. In *Tafero v. Wainwright* (11th Cir.1986), 796 F.2d 1314, on review of the habeas corpus petition of the murderer of a police officer, the court concluded that the fact the trial judge was a former police officer and had an emotional reaction at the victim's funeral did not mandate the judge's recusal or constitute grounds for disqualification. As the court observed in *United States v. Valenti* (D.N.J.1954), 120 F.Supp. 80:

> "A judge of a court is human, and, like every other man, must have his likes and dislikes.... In so far as he is not swayed by these natural emotions to do any man an injustice, the fact that he has them in common with his brother man does not disqualify him from trying a case."

*Id.* at 90, quoting *May v. May* (1912), 150 Ky. 522, 524, 150 S.W. 685, 686. *See also United States v. Cohen* (E.D.Mich.1986), 644 F.Supp. 113.

We have uncovered no cases in which a judge was asked to be disqualified for crying at any time during any trial or proceeding. Several courts have, however, considered crying jurors, and concluded that tears alone do not necessitate reversal. *See Murray v. State* (1978), Fla.App., 356 So.2d 71 (juror's crying during polling of jury did not constitute reasonable basis for belief that verdict might be subject to legal challenge); *Gilreath v. State* (1981), 247 Ga. 814, 279 S.E.2d 650, *cert. denied* (1982), 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (fact that several jurors were crying as death penalty verdict was announced would not establish that death penalty was imposed under influence of passion or prejudice—crying merely reflected that the jurors appreciated the enormity of their decision); *State v. Naucke* (1992), Mo., 829 S.W.2d 445, *cert. denied,* —— U.S. ——, 113 S.Ct. 427, 121 L.Ed.2d 348 (trial judge did not abuse discretion in refusing to declare mistrial or replace crying juror); *State v. Grice* (1988), 109 N.J. 379, 537 A.2d 683 (failure to examine or excuse juror who was crying during victim's testimony was not reversible error).

■■■ The mere fact a judge cries does not, in itself, demonstrate bias or prejudice. Turning to the particular facts before us, we conclude that the trial judge was not biased or prejudiced against Cook. At the sentencing hearing, the trial judge indicated that she was moved to tears by the victim's forgiving nature. *Record* at 337–38. We cannot agree that this emotional display indicates any bias whatsoever against Cook. Such an expression of emotion reflects no hostility or animosity directed at Cook, but rather, demonstrates the trial judge's appreciation of the victim's uncommon attitude, which the trial judge

found to be uncharacteristically positive under the circumstances.

Neither do we accept Cook's argument that the trial judge's characterization of Cook's crime as "vicious" constituted an expression of her opinion on the merits of Cook's sentence. There can be no question that the actions perpetrated against the victim were vicious. Cook's own predispositional psychological evaluation related that he acknowledged his behavior was vicious, *record* at 68, 112, and his counsel, during final arguments, recognized: "We're talking about an absolutely brutal, serious crime. There's no question. I'm not trying to minimize that at all, and I don't think Rodney is." *Record* at 349–50. The trial judge did not state that she believed Cook was vicious, she merely observed that the victim was the victim of a vicious crime. We conclude that the trial judge's comment was not an impermissible expression of an opinion of the merits of the controversy before her. *See Gary v. State* (1984), Ind., 471 N.E.2d 695.

The fact the trial judge was emotional does not require her recusal unless she was swayed by that emotion. The trial judge stated that, although she was emotional at the time, Cook had "nothing to fear" from that fact. *Record* at 338. Nothing in the record suggests that the trial judge was swayed by her emotions. There was a brief recess after the trial judge's comments and then final arguments were made. The trial judge's comments reflected that she was composed and in control when she sentenced Cook, and was not moved by her emotions "to do any man an injustice." *Valenti, supra* at 90.

Nor do we consider the imposition of aggravated consecutive sentences on two of Cook's three convictions as evidence of the trial judge's bias, particularly in light of the aggravating circumstances recited by the trial judge. *See Radcliff, supra.* The sentences were not the maximum permitted under the statute, *see* Ind.Code 35–50–2–4 (presumptive sentence for class A

felony is thirty years, and twenty years may be added for aggravating circumstances), as the State had requested, and all of Cook's sentences were not ordered to be served consecutively.

As Cook has failed to demonstrate that the trial judge expressed an opinion on the merits of the controversy before her, or that she was swayed by her brief emotional reaction, we conclude that Cook has not established that the trial judge was actually biased against him.

*ISSUE THREE*—Did the trial judge properly weigh the aggravating and mitigating circumstances? [7]

*PARTIES' CONTENTIONS*—Cook claims that the trial judge did not properly weigh the aggravating and mitigating circumstances because the trial judge did not enter her findings of mitigating circumstances until seven days after the sentencing hearing. The State retorts that the trial judge was not required to find any mitigating circumstances or weigh the circumstances in the same way the defendant does.

*CONCLUSION*—The trial judge properly sentenced Cook.

██ At the sentencing hearing, the trial judge articulated three aggravating circumstances to support the imposition of Cook's sentences: 1) the fact Cook used subterfuge to attain a position to harm the victim; 2) the fact that after the rape Cook left and then returned with the specific intent to kill the victim and his use of a pillow to muffle the gunshot to evade detection; and 3) the fact Cook was in need of corrective treatment that could only be found in a prison setting. To support the third aggravating factor, the trial judge quoted extensively from Cook's predispositional psychological evaluation.

Seven days later, the trial judge entered an order amending the abstract of the judgment, which provided:

"The Court, having failed to announce on the record at sentencing in this matter

---

7. We observe that Cook has not challenged his sentences as being manifestly unreasonable in light of the nature of his offense and his charac-

ter, pursuant to Ind.Rules of Procedure, Appellate Rule 17(B)(1).

on April 23, 1992, any mitigating factors found, does hereby find that the defendant's remorse and his youth are mitigating factors in determining the sentence imposed in this case. However, the Court further finds that these mitigating factors do not outweigh the aggravating factors previously stated on the record.

THEREFORE, THE COURT ORDERED, ADJUDGED AND DECREED that the defendant's youth and exhibited remorse are mitigating factors which, however, are not [sic] out weighted by the aggravating factors previously found."

*Record* at 132.

▇ While the trial court must consider the mitigating factors presented by a defendant, a finding of mitigating circumstances is discretionary, not mandatory, and the trial court has no duty to either explain the failure to make a finding concerning mitigating factors or to make an affirmative finding negating potentially mitigating circumstances. *McCollum v. State* (1991), Ind., 582 N.E.2d 804; *Aguirre v. State* (1990), Ind., 552 N.E.2d 473; *Middlebrook v. State* (1992), Ind.App., 593 N.E.2d 212.

Cook relies on *Boyd v. State* (1991), Ind., 564 N.E.2d 519, to support his contention that the trial judge did not properly weigh the aggravating and mitigating circumstances. In *Boyd,* the trial court found that there were no mitigating factors. The Supreme Court observed that there was one mitigating circumstance supported by the evidence and stated that the trial court's finding suggested that it overlooked the factor and did not properly weigh that mitigating circumstance. The Court nevertheless concluded that the overlooked factor would not have had an impact on the defendant's sentence, and affirmed the defendant's sentence.

Cook's reliance on *Boyd* is misplaced. Unlike the situation in *Boyd,* the trial judge here did not find that no mitigating factors existed. Rather, the trial judge's order amending the abstract of the judgment indicated that she only failed to *announce* the mitigating factors she considered.

Nothing in the record suggests the trial judge failed to consider Cook's remorse or youth when she sentenced him. Cook's remorse and youth were mentioned in his predispositional psychological evaluation, which was expressly relied upon by the trial judge, as well as in the sentencing memorandum and presentence report prepared for the trial judge. *Record* at 67, 103, 112. Cook's letter to the victim was also submitted to the trial judge. *Record* at 89–96.

Because the trial judge was sufficiently apprised of the mitigating circumstances, and as she specifically determined that the aggravating factors outweighed the mitigating factors, we conclude that the trial judge properly balanced the aggravating and mitigating circumstances. *See Eguia v. State* (1984), Ind.App., 468 N.E.2d 559. Cook's arguments to the contrary are essentially requests for us to substitute our judgment for that of the trial judge.

Judgment affirmed.

NAJAM, J., concurs.

SULLIVAN, J., concurs as to issue two and concurs in result as to issues one and three.