**Jeremy Wayne SMITH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 17S00–0009–CR–551.**

Supreme Court of Indiana.

June 28, 2002.

**ON DIRECT APPEAL**

RUCKER, Justice.

Jeremy Smith pleaded guilty but mentally ill to murder and guilty to arson related to the murder. In unrelated matters, he pleaded guilty to burglary, theft, two counts of harassment, and failure to register as a sex offender with local law enforcement. The trial court imposed the maximum sentence for each offense and ran them consecutively for a total term of one hundred eleven years and three hundred sixty days. In this direct appeal, Smith challenges his sentence contending the trial court: (1) did not explain its reasons for imposing consecutive sentences; (2) cited an erroneous aggravating factor; and (3) failed to consider his mental illness as a mitigating factor. He also complains the trial court was biased.

We affirm the trial court's judgment but remand for a new sentencing order on the issue of Smith's mental illness as a mitigating factor.

### Facts

Although they were not acquainted, Smith and Shallon Bush lived in the same apartment complex in Auburn, Indiana. In the early morning hours of July 19, 1999, Smith walked to Bush's apartment where she was living with her three-year-old son. Smith opened the door with a key he had stolen from the apartment manager's office, walked into Bush's bedroom where she was sleeping, woke her, and strangled her to death. To conceal the crime, Smith poured vodka over her body and started a fire.

Picking a name at random from a telephone directory, Smith called Meghann McAfee during the day on October 4, 1999, and left an obscene and threatening message on her answering machine. Later that evening, he broke into McAfee's home and removed several items of personal property. A few months later, in February 2000, Smith again called McAfee and left another message on the answering machine similar in content to the previous one.

Smith was eventually arrested and charged with murder and arson as a Class A felony in connection with Bush's death; and burglary as a Class B felony, theft as a Class D felony, and two counts of harassment as Class B misdemeanors in connection with his actions concerning McAfee. He also was charged with failure to register as a Class D felony.[1] Smith pleaded guilty to all offenses as charged. At the time of sentencing, the trial court identified several aggravating factors, some of which were offense specific. With respect to the murder, the trial court noted the nature and circumstances of the crime: it occurred in the victim's home, Smith's size and weight advantage, the crime was committed with the use of a stolen key which demonstrated planning, Smith's lack of remorse, Smith's indications that he would kill again, and the impact of the crime on the victim's three-year-old son. Concerning the burglary and theft, the trial court found they were planned and noted the traumatizing effect the threatening telephone calls had on the victim. The trial court also found as aggravating factors Smith's prior criminal history, his violation of probation, and his need for correctional or rehabilitative treatment that would best be provided by a penal institution. Finding no mitigating factors, the trial court sentenced Smith to the maximum term for each offense: sixty-five years for murder, twenty years for arson, twenty years for burglary, three years for theft, and one hundred eighty days for each count of harassment. The trial court ordered the sentences to run consecutively for a total term of one hundred eleven years and three hundred sixty days. This appeal followed.

## Discussion

### I.

■■■ Conceding the trial court explained its reasons for imposing enhanced sentences, Smith complains the trial court erred in failing to explain also its reasons for imposing consecutive sentences. This argument fails. A trial court is not obligated to identify the aggravators that support consecutive sentences separately from the factors that support the sentence enhancement. *Blanche v. State*, 690 N.E.2d 709, 716 (Ind.1998). Rather, the same factors used to enhance a sentence may also be used to justify a consecutive sentence. *Miller v. State*, 716 N.E.2d 367, 371 (Ind. 1999). In this case, the trial court relied on the same factors declaring "every one of those aggravating circumstances is also a basis for me to impose consecutive sentences." R. at 547. We find no error on this issue.

### II.

■■■ Smith next contends the trial court erred in citing as an aggravating factor the impact that his crime imposed on the murder victim's three-year-old son. We must agree. As this Court has previously noted: "[w]e appreciate the terrible loss of a loved one. But because such impact on family members accompanies almost every murder, we believe it is encompassed within the range of impact which the presumptive sentence is designed to punish." *Bacher v. State*, 686 N.E.2d 791, 801 (Ind.1997). Although the impact on others may qualify as an aggravator in certain cases, " 'the defendant's actions must have had an impact on ... 'other persons' of a destructive nature that is not normally associated with the commission of

---

1. Because of a 1997 conviction for child molesting, Smith qualified as a "sex and violent offender." Ind.Code § 5–2–12–4(a). A person obtaining that status is required to register with local law enforcement authorities. I.C. § 5–2–12–5. The knowing or intentional failure to do so is a criminal offense. I.C. § 5–2–12–9.

the offense in question and this impact must be foreseeable to the defendant.'" *Id.* (quoting *Washington v. Johnson,* 124 Wash.2d 57, 873 P.2d 514, 525 (1994)). In this case, the trial court did not articulate how the impact on Bush's child was of the type so distinct that it raised to the level of an aggravating factor. Citing this impact evidence as an aggravating factor was therefore improper.

■ However, when the trial court improperly applies an aggravator, but other valid aggravating circumstances exist, a sentence enhancement may still be upheld. *Gibson v. State,* 702 N.E.2d 707, 710 (Ind. 1998). Here, the trial court cited additional aggravating circumstances, which Smith does not challenge. Subject to our discussion *infra* Section III, the additional aggravators are sufficient to support Smith's enhanced sentences.

In a related argument, Smith contends that in imposing sentence, the trial court erroneously considered "impact statements" from a number of Bush's relatives and friends. The record shows the trial court received numerous letters from Bush's friends and family. R. at 102–15, 119–41, 147–201. Some expressed grief and loss, while others recommended maximum punishment. *Id.* At the sentencing hearing, several of Bush's relatives testified about the psychological and emotional effects the murder had on their lives. Our discussion of *Bacher, supra,* is equally applicable here. In any event, the record shows the trial court did not cite or refer to the testimony of Bush's relatives as an aggravating factor. Smith's argument on this point fails.

### III.

■ Smith also complains the trial court failed to consider his mental illness as a mitigating factor. The facts are these. While this case was pending, counsel raised the issue of Smith's competency to stand trial. As a result, the trial court appointed Dr. Domingo Cruz–Diaz and Dr. Mark Souder to examine Smith for that purpose. Both submitted written reports to the trial court concluding that Smith was competent to stand trial. However, Dr. Souder opined further that Smith suffered from paranoid schizophrenia, depression, antisocial personality disorder, and attention and impulse control problems. R. at 230. At the change of plea hearing, the trial court accepted the reports as evidence to support Smith's plea of guilty but mentally ill to murder. R. at 440–41. At sentencing, no evidence of Smith's mental illness was introduced. However, referring to a very detailed and thorough pre-sentence investigation report, the trial court discussed Smith's history of mental illness. The report included not only the written evaluations of the court-appointed psychiatrists but also reports from three different facilities where Smith had been treated at various times since the age of eighteen for a variety of mental health problems. R. at 262–66. While imposing sentence, the trial court declared:

> I have, in good faith, reviewed the mitigating factors. They're set forth in the Indiana statute. I've reviewed them specifically. I have thought in the quiet times when I have studied the report and thought about this case and made notes and considered what would be just and fair[;] what are the mitigating circumstances present in Mr. Smith's favor. I find there are none.

R. at 547.

■ It is true that the trial court is not required to find the presence of mitigating factors; and if the trial court does not find the existence of a mitigating factor after it has been argued by counsel, then the trial court is not obligated to explain why it has found that the factor does not

exist. *Fugate v. State,* 608 N.E.2d 1370, 1374 (Ind.1993). It is also true that the trial court is not required to weigh or credit the mitigating evidence the way a defendant suggests it should be credited or weighed. *Id.* Further, a guilty but mentally ill defendant "is not automatically entitled to any particular credit or deduction from his otherwise aggravated sentence[.]" *Archer v. State,* 689 N.E.2d 678, 684 (Ind. 1997). Nonetheless, we have held that in sentencing a guilty but mentally ill defendant, trial courts "should at a minimum carefully consider on the record what mitigating weight, if any, to accord to any evidence of mental illness, even though there is no obligation to give the evidence the same weight the defendant does." *Weeks v. State,* 697 N.E.2d 28, 30 (Ind. 1998). As we have explained, there are several factors that bear on this determination, including: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. *Id.; Archer,* 689 N.E.2d at 685. The factors are not exclusive but are among those the trial court must consider in determining what, if any, mitigating weight to give to any evidence of a defendant's mental illness after a finding or plea of guilty but mentally ill. Here, implicit in the trial court's sentencing order is a finding that Smith's mental illness is entitled no mitigating weight. This finding is not necessarily improper. However, because there is no indication the trial court reached that conclusion after applying any of the criteria set forth in *Weeks* and *Archer,* we must remand this cause for a new sentencing order. A new sentencing hearing, however, is unnecessary. *See O'Connell v. State,* 742 N.E.2d 943, 952–53 (Ind.2001) (setting forth the options a trial court may employ when a cause is remanded for a new sentencing order).

## IV.

■ For his final allegation of error, Smith contends that statements the trial court made at the time of sentencing demonstrate his bias and prejudice. Specifically, Smith points to remarks in which the trial court referred to facts allegedly not supported by the record; described the murder and arson as the "act of an evil, mean, depraved, perverted animal," R. at 544; and made a Biblical reference that included the comment, "May the soul of Shallon Bush now rest in peace[,]" R. at 551. Smith urges that we remand this cause so that a different judge can sentence him.

■ Merely asserting bias and prejudice does not make it so. The law presumes that a judge is unbiased and unprejudiced. *Lee v. State,* 735 N.E.2d 1169, 1172 (Ind.2000). And to rebut that presumption, a defendant must establish from the judge's conduct actual bias or prejudice that places the defendant in jeopardy. *Harvey v. State,* 751 N.E.2d 254, 259 (Ind.Ct.App.2001); *Cook v. State,* 612 N.E.2d 1085, 1088 (Ind.Ct.App.1993). Such bias and prejudice exists only where there is an undisputed claim or where the judge expressed an opinion of the controversy over which the judge was presiding. *Resnover v. State,* 507 N.E.2d 1382, 1391 (Ind.1987); *Harvey,* 751 N.E.2d at 259; *Cook,* 612 N.E.2d at 1088. The imposition of the maximum sentence does not support a claim of bias. *Radcliff v. State,* 579 N.E.2d 71, 73 (Ind.1991). In this case, Smith has not carried his burden of proof. Each of the aggravating circumstances cited by the trial court was fully supported by the record. As for the Biblical reference and the comment on the heinous na-

ture of the murder, we are not persuaded they represent an expression of the trial court's opinion on the merits of Smith's sentence. Smith is not entitled to relief on this claim.

### Conclusion

This cause is remanded for a new sentencing order consistent with this opinion. In all other respects, we affirm the judgment of the trial court.

DICKSON and SULLIVAN, JJ., concur.

SHEPARD, C.J., dissents with separate opinion.

BOEHM, J., dissents with separate opinion in which SHEPARD, C.J., joins.

SHEPARD, C.J., dissenting.

Smith has argued that a number of points reflecting on his mental health should have been given mitigating weight by the trial judge. Some of these proffers, like "antisocial personality disorder" and "impulse control problems," are characteristics so commonly associated with violent crimes that I am not surprised that Judge Cherry did not find them mitigating.

Others, like paranoid schizophrenia, stand on firmer ground and probably should have been given some weight.

I vote to affirm, however, because there are some fifteen aggravating circumstances found by the trial court in a lengthy and precise sentencing order and not challenged on appeal. These include a list of prior felonies both here and in Ohio, committing the current offenses while on probation, failure to respond to numerous past efforts at counseling and treatment programs, "no remorse whatsoever," selection of a victim a foot shorter and sixty pounds lighter, and a long campaign de-

signed to terrify the victim before the crime, to name a few.

The court's sentencing order runs to nine pages single-spaced in the appellant's brief on appeal. It is both thoughtful and meticulous, and it persuades me that the sentence is appropriate.

I would affirm rather than remand.

BOEHM, Justice, dissenting.

In *Weeks v. State*, 697 N.E.2d 28 (Ind. 1998), we held that a finding by a jury of guilty but mentally ill required the sentencing judge to articulate the effect of that finding on the sentence. In my view, this requires a determination whether the defendant's mental illness was a mitigating factor and, if so, what weight it deserves. The factors identified in *Archer v. State*, 689 N.E.2d 678 (Ind.1997), may be among the relevant considerations in those determinations, but these will undoubtedly vary from case to case.

Here we have a plea of guilty but mentally ill, not a finding by the trier of fact. Although the trial court dismissed Smith's mental illness with minimal discussion and a finding of no mitigating circumstances, I would nevertheless affirm the sentence because I believe the evidence of mental illness, which is solely documentary, demonstrates that this case is far removed from the facts of *Weeks*, where the defendant's bizarre behavior over a long period of time was obvious, and the apparently motiveless crime undoubtedly supported the jury's finding of guilty but mentally ill. In addition, the detailed severely aggravating facts identified by the trial court and cited by the Chief Justice in my view demonstrate that this sentence should be affirmed for the reasons the Chief Justice gives.

Finally, I do not agree with the majority that the impact on the three-year-old son

was an improper consideration in sentencing. Smith lived three doors from Ms. Bush. Smith was thus on fair notice that he was killing the mother of a three year old. Not every murder deprives a child of its mother, and particularly not at such a tender age. This murder thus was, in terminology sometimes adopted by this court, "worse" than many, and I believe the trial court properly took that into account.

SHEPARD, C.J., concurs.