**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 26 2013, 8:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**THOMAS G. GODFREY**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHANE E. MAXWELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1212-CR-999 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable David A. Happe, Judge
Cause No. 48C01-1012-FA-873

**July 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

Shane Maxwell appeals his seven-year sentence for Class C felony child molesting. We affirm.

## ISSUES

Maxwell raises two issues on appeal: (1) whether the trial court abused its discretion in sentencing him and (2) whether his sentence is inappropriate.

## FACTS AND PROCEDURAL HISTORY

In December 2010, the State charged Maxwell with two counts of Class A felony child molesting for sexual intercourse and deviate sexual conduct with his girlfriend's daughter J.T., who at the time of the alleged conduct was under fourteen years of age.

A jury was empaneled on October 9, 2012, and the presentation of evidence was set to begin on October 17, 2012. Between those dates, Maxwell pleaded guilty to an amended count of Class C felony child molesting, and the State dismissed the count involving deviate sexual conduct. There was no written plea agreement, and Maxwell understood that sentencing was left to the discretion of the court. However, the parties orally agreed that the State would recommend home detention with GPS monitoring if Maxwell presented evidence of his medical conditions as represented during plea negotiations.

At the guilty plea hearing, the State provided the following factual basis:

[O]n or between November 2002 and December 1, 2006 in Madison County, State of Indiana, Shane Eugene Maxwell did with a child under fourteen (14) years of age to wit: [J.T.], date of birth December 11, 1992. Uh, fondling, touching of either the child or the person with the intent to arouse or satisfy the sexual . . . desires of the child or the older person.

2

More specifically the State would show that [J.T.] made a report with the police department indicating that the sexual event had occurred between her and the Defendant the best time that she could place on it, she knew it began sometime after her father died which was October 30, 2002 and she had moved out of the house by age fourteen (14). Uh, the Defendant was a father figure to her. Uhm, living with her mother from the time she was a small child. During that time period I believe, possibly when she was around . . . eleven (11) or twelve (12) years of age, there was an encounter in the bathroom at the house located at 315 West 5th Street here in Anderson, Madison County, Indiana, where there was some sexual touching between the Defendant and . . . the victim, [J.T.], where she was made to place her hand on his penis and masturbate the Defendant.

Tr. pp. 18-19. Maxwell confirmed the factual basis. The trial court accepted the plea and entered judgment of conviction.

At the sentencing hearing, J.T.'s paternal grandmother testified that J.T. had lived with her since revealing the abuse to the family because J.T.'s mother accused her of lying and sided with Maxwell. J.T.'s grandmother further stated that she and her husband sought treatment for J.T. when she began talking about suicide and that Maxwell's abuse robbed J.T. of her childhood and caused her to become a bitter young adult.

Maxwell testified about his physical and mental health issues to provide a basis for his request for home detention with GPS monitoring. He stated that he has back problems from when he fell off a roof and injured discs in his spine and that he has permanent nerve damage from surgery complications. He also presented evidence that he has been diagnosed with multiple sclerosis, which he said has since traveled to his brain and caused some loss of eyesight and short term memory loss. Maxwell further testified that he has depression, bipolar disorder, and borderline schizophrenia. He stated he has several doctors for his conditions, takes several expensive medications, and is on full

3

disability. Maxwell informed the court that Jackson County was one of the limited places in Indiana that offered home detention with GPS monitoring and that he and J.T.'s mother had found a place to live in Jackson County and were ready to relocate.

When imposing Maxwell's sentence, the trial court gave a detailed sentencing statement:

> Mr. Maxwell, we spent a lot of today's hearing talking about your medical situation and MS can be a horrible disease, I understand. And I understand that it must be a terrible thing to have your life change for the worse by something that you can't control. And I do feel sympathy for the situation that you're in and the symptoms that you suffer from that. But at the same time . . . I can't help but not miss . . . the parallel between the disease that you suffer from and the crime that you committed. The reason that we treat sexual offenses so seriously, especially sexual offenses against children, is that they're life changing, and they have consequences, and mental and emotional scars that don't go away. And maybe as you think about [t]his in the weeks and years to come, you'll come to appreciate the parallel between what you're suffering yourself and what you caused the victim of these offenses to suffer through. I think there is a parallel there, there is a comparison. The difference, of course, is that your condition is an unfortunate medical fact that sometimes happens just because of the way we're made up as humans. And what happened to the victim here was a result of a choice that you made. And when there is such a horrible violation of a child the consequences have to be serious. And it's true that nothing I can do here can really lessen or remove the pain that you've caused in that child, now adult's life. But we have to impose a punishment in these cases that recognizes the severity of the violation that you caused. The sentencing process that the law requires me to go through requires me to look at the aggravating and mitigating factors that are present based on the record. I do find that there are aggravators. The criminal and delinquent behavior of the defendant in his past is the primary aggravator, and it is a powerful aggravator in this case given the defendant's record as set forth in the P.S.I. I think that it is a separate aggravator that the defendant violated a position of trust. You had access to the victim here because of your relationship with the child's mother. This isn't like a situation where, uh, someone commits an offense against a child [who is] a stranger to them. You knew this child, you had access to her because of that relationship of trust, and her family members allowed you to be around that child because they trusted you, and you violated that. In terms of

4

mitigating factors there are a few present on the record. The defendant has expressed remorse at a very late date and, um, in relatively pale form. You've said you['re] sorry and I accept that and I find that as a mitigator but I don't entitle it to much weight given the circumstances. The fact that you do suffer from a disability, and the severe symptoms that you have from MS, I think is a factor that may make incarceration more difficult for you and I think that's a mitigating factor that has to [be] considered. The fact that you plead[ed] guilty and accepted responsibility here is a mitigator that is present and I will find that as a mitigator. But again, I entitle that to very little weight given the circumstances. You pled guilty after the jury selection process had begun, in the middle of the trial really, and you did that to avoid greater charges that would have had a much, much, greater exposure for you in terms of sentencing. So given those circumstances I don't find that your acceptance of responsibility and guilty plea are entitled to significant weight here, although they are mitigators. When I balance those aggravators against the mitigators I do find that the aggravators substantial[ly] outweigh the mitigators. In this circumstance, given your criminal history and the nature of this offense, I don't find that in-home detention is an adequate consequence and I'm not gonna put you on in-home detention.

*Id.* at 56-59. Thus, the court identified two aggravators—(1) Maxwell's criminal history and (2) that he violated a position of trust—and three mitigators—(1) his remorse; (2) his "medical disability," Appellant's App. p. 9 (sentencing order); and (3) his guilty plea and acceptance of responsibility. Finding that the aggravators substantially outweighed the mitigators, the court sentenced him to seven years executed in the Department of Correction. Maxwell now appeals his sentence.

DISCUSSION AND DECISION

I. ABUSE OF DISCRETION

Maxwell contends the trial court abused its discretion in sentencing him. Subject to the review and revision power discussed below, sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of

5

discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* Among other ways, a trial court abuses its discretion when it enters a sentencing statement that includes reasons that are improper as a matter of law or when it enters a sentencing statement that omits reasons that are clearly supported by the record and advanced for consideration. *Id.* at 490-91.

### A. Greater Offense

First, Maxwell argues the court improperly found that he was guilty of the greater offense of Class A felony child molesting as an aggravator. However, this was not an aggravator. The only aggravators noted by the trial court were Maxwell's criminal history and the fact that he violated a position of trust.

Maxwell nonetheless claims the following statements at sentencing show the court surely increased his sentence based on its own supposed conclusion that he was guilty of the greater offense:

– J.T.'s grandmother's testimony that J.T. told the family Maxwell had raped her.

– The State's comments that the delay before charges were filed caused evidentiary issues, that it was "disgusting" that J.T. showed more compassion toward Maxwell than he or J.T.'s mother had shown to her in the courtroom, and that anything less than the maximum of eight years "would be a travesty." Tr. p. 54.

– The court's reference to J.T. as the "victim of these offenses" (plural), reference to the crime as "a horrible violation of a child," and remark that Maxwell's sentence must "recognize[ ] the severity of the violation that you caused." *Id.* at 57.

6

Maxwell's assumption is mere speculation. Simply because J.T.'s grandmother recounted that J.T. said she was raped does not mean the court sentenced Maxwell as if he was guilty of a Class A felony. Indeed, Maxwell's seven-year sentence, one year below the maximum for a Class C felony, belies this claim. As to the statements by the State and the trial court, those comments merely reflected why the State agreed to the plea, J.T.'s approval of both the plea to the lesser charge and the recommendation of home detention with GPS monitoring, and the aggravating nature of the offense—that Maxwell violated a position of trust by molesting his girlfriend's young daughter.

The trial court did not rely on an improper aggravator.

### B. Physical Health Issues

Second, while acknowledging the court identified his physical health issues as a mitigator, Maxwell argues the court failed to find they were a *substantial* mitigator. This claim fails for the plain fact that the relative weight of aggravating and mitigating circumstances is not subject to review for abuse of discretion. *Anglemyer*, 868 N.E.2d at 491.

### C. Mental Health Issues

Third, Maxwell argues the court failed to identify his mental health issues as a mitigator. It is unclear whether the court's reference to his "medical disability" as a mitigator in the sentencing order refers to his mental health issues in addition to his physical health issues. Appellant's App. p. 9. Even if it does not, a trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating circumstance. *Rascoe v. State*, 736 N.E.2d 246, 249 (Ind. 2000). If a trial court does not find the

7

existence of a mitigating factor after it has been argued by counsel, the court is not obligated to explain why it has found that the factor does not exist. *Anglemyer*, 868 N.E.2d at 493.

Maxwell nevertheless claims he is entitled to a new sentencing hearing because the court was required to indicate in its sentencing order that it gave his mental health evidence due consideration. *See* Appellant's Br. pp. 18-19; Appellant's Reply Br. pp. 7-8. He cites several cases for support; however, they are clearly distinguishable in that each involved defendants who had been found guilty but mentally ill. *See, e.g.*, *Smith v. State*, 770 N.E.2d 818, 823 (Ind. 2002). Moreover, Maxwell did not testify as to the factors indicated in those cases: the extent of his inability to control his behavior due to his mental health issues, his overall limitations on functioning due to his mental health issues, the duration of his mental health issues, or the extent of any nexus between his mental health issues and the commission of the crime. *See id.* Thus, the court would have been unable to apply such an analysis even if it wanted to.

We conclude that the trial court did not abuse its discretion in sentencing Maxwell.

## II. INAPPROPRIATE SENTENCE

Maxwell next contends the length of his sentence and particularly his placement in the Department of Correction are inappropriate. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court

finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer*, 868 N.E.2d at 491). The defendant has the burden of persuading us that his sentence is inappropriate. *Id.*

We first look to the statutory range established for the class of the offense. Maxwell pleaded guilty to a Class C felony. The statutory range for a Class C felony is between two and eight years, with the advisory sentence being four years. Ind. Code § 35-50-2-6 (2005). Maxwell received a seven-year sentence to be served in the Department of Correction.

We next look to the nature of the offense and Maxwell's character. As to the nature of the offense, Maxwell abused his position of trust as a father figure to sexually molest his girlfriend's daughter when she was just eleven or twelve years old. J.T.'s victim impact statement reflects that she has problems trusting people and suffers from nightmares, depression, relationship problems, loss of sleep and appetite, and anger as a result of Maxwell's abuse. J.T.'s grandmother testified that the abuse had pushed J.T. to thoughts of suicide and robbed her of her childhood.

As to his character, Maxwell, who was thirty-eight years old at the time of sentencing, has a history of delinquent and criminal activity. As a juvenile, he was adjudicated a delinquent for attempted voluntary manslaughter, criminal conversion, criminal mischief, and public intoxication. As an adult, he has been convicted of burglary, resisting law enforcement, battery, check fraud, check deception, and public

9

intoxication. Maxwell has been given the benefit of probation several times in the past but squandered those opportunities by repeatedly violating his probation.

Maxwell nonetheless claims that his significant physical and mental health issues render his sentence inappropriate. However, the record does not reveal any evidence other than his own testimony that he will not be able to receive the care he needs at the Department of Correction. In short, he has failed to persuade us that his sentence is inappropriate.

CONCLUSION

We therefore affirm Maxwell's sentence.

MATHIAS, J., and BROWN, J., concur.