## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 23 2019, 9:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Bryan Scott Lucas
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana
Indianapolis, Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bryan Scott Lucas, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | September 23, 2019 <br><br> Court of Appeals Case No. 18A-PC-2267 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Samuel Cappas, Judge <br><br> The Honorable Natalie Bokota, Magistrate <br><br> Trial Court Cause No. 45G04-1605-PC-2 |

**Bradford, Judge.**

# Case Summary

[1]    In October of 2008, pursuant to a plea agreement, Bryan Scott Lucas agreed to plead guilty to seven counts of Class B felony robbery and received an aggregate, fixed sentence of forty years. In November of 2008, the trial court accepted the plea agreement and sentenced Lucas accordingly. In February of 2017, Lucas filed his amended petition for post-conviction relief ("PCR"), contending that (1) his sentence violated the general rule against double enhancement, (2) his consecutive sentences were illegal, and (3) he received ineffective assistance of counsel. The post-conviction court denied his petition in full. Lucas contends that the post-conviction court erred by denying him PCR and was biased against him. Because we disagree, we affirm.

# Facts and Procedural History

[2]    Between November 21, 2007, and December 10, 2007, Lucas and his accomplice committed eight robberies at different businesses in Lake County. Each time, Lucas brandished a knife and took money from the businesses' cash register while a victim was present. The State charged Lucas with seven counts of Class B felony robbery (Counts I–V, VII, VIII) and one count of Class D felony theft (Count VI). On October 24, 2008, pursuant to a plea agreement, Lucas pled guilty to the seven robbery counts; in exchange, the State agreed to dismiss the theft count. The plea agreement also provided for a fixed, aggregate

sentence of forty years. On November 19, 2008, the trial court accepted the plea agreement and sentenced Lucas according to its terms. By agreeing to plead guilty, Lucas waived his right to file a direct appeal. On February 21, 2017, Lucas filed an amended PCR petition, alleging that his sentence was illegal and that he received ineffective assistance of trial counsel. The post-conviction court held a hearing on Lucas's PCR petition and denied it on June 13, 2018.

# Discussion and Decision

[3] The standard of review for appeals from the denial of PCR is well-settled. Petitioners who have exhausted the direct-appeal process may challenge the correctness of their convictions and sentences by filing a post-conviction petition. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Petitioner bears the burden of establishing grounds for PCR by a preponderance of the evidence. *Id*. By appealing from a negative judgment, Petitioner faces a rigorous standard of review. *Wesley v. State*, 788 N.E.2d 1247, 1250 (Ind. 2003). Denial of PCR will be affirmed unless, "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Id*. We do not defer to the post-conviction court's legal conclusion but do accept its factual findings unless they are clearly erroneous. *Stevens*, 770 N.E.2d at 746. The post-conviction process does not provide petitioner with a "super-appeal" but, rather, a "narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules." *Rouster v. State*, 705 N.E.2d 999, 1003 (Ind. 1999).

# I. Double Enhancement

Lucas seemingly contends that his sentence resulted in an impermissible double enhancement. "The general rule is that, absent explicit legislative direction, a sentence imposed following a conviction under a progressive penalty statute may not be increased further under either the general habitual offender statute or a specialized habitual offender statute." *Dye v. State*, 972 N.E.2d 853, 857 (Ind. 2012) (internal quotations and emphasis omitted), *clarified on reh'g in Dye v. State*, 984 N.E.2d 625 (Ind. 2013). "Likewise, absent explicit legislative direction, a conviction under a specialized habitual-offender statute cannot be further enhanced under the general habitual-offender statute." *Id.* In applying this general rule against double enhancements, we first look to determine whether the defendant's underlying conviction is pursuant to a progressive-penalty statute or a specialized habitual-offender statute, if not, there is no double-enhancement issue. *Id.* at 858. "Specialized habitual offender statutes authorize sentencing enhancements where the defendant has been convicted of a certain number of similar offenses." *Id*. at 857. Progressive-penalty statutes "elevate the level of an offense (with the correspondingly enhanced sentence) where the defendant previously has been convicted of a particular offense." *Id.* Whether a particular double enhancement is permissible is a matter of statutory interpretation. *Id.*

Here, Lucas's underlying convictions are Class B felony robberies, which were elevated from Class C felonies based on his use of a deadly weapon. While Lucas's underlying convictions were enhanced from Class C felonies to Class B

felonies, it was not based on him having been previously convicted of a certain number of similar offenses or a particular offense. Therefore, Lucas's underlying convictions were enhanced pursuant to neither a specialized habitual-offender statute nor a progressive-penalty statute. Consequently, there is no double enhancement issue.

# II. Consecutive Sentences

[6] Because the totality of his consecutive sentences exceeded the advisory sentence for a felony which was one class of felony higher than the most serious of the felonies for which he was convicted, Lucas contends that his sentence was illegal pursuant to Indiana Code subsection 35-50-1-2(c). Indiana Code subsection 35-50-1-2(c) provides that

> (c) Except as provided in subsection (d) or (e), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the:
>
>> (1) aggravating circumstances in IC 35-38-1-7.1(a); and
>>
>> (2) mitigating circumstances in IC 35-38-1-7.1(b);
>
> in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Lucas's reliance on Indiana Code subsection 35-50-1-2(c) fails for multiple reasons. First, Lucas's convictions did not arise out of one episode of criminal conduct. An episode of criminal conduct means "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35-50-1-2(b). "In determining whether multiple offenses constitute an episode of criminal conduct, the focus is on the timing of the offenses and the simultaneous and contemporaneous nature, if any of the crimes." *Williams v. State*, 891 N.E.2d 621, 631 (Ind. Ct. App. 2008). "[A]dditional guidance on the question can be obtained by considering whether the alleged conduct was so closely related in time, place, and circumstance that a complete account of one charge cannot be related without referring to the details of the other charge." *Id.* (internal quotations omitted). Here, each robbery was a distinct criminal offense, occurring on a different day, at a different location, and with a different victim. The complete account of each offense can be related without referring to the others. Second, Lucas's convictions are crimes of violence, to which Indiana Code subsection 35-50-1-2(c) does not apply. *See* Indiana Code subsection 35-50-1-2(b) (providing that Class B robbery is a crime of violence). Given the nature of Lucas's convictions, we conclude that the totality of his consecutive sentences was proper. *See O'Connell v. State*, 742 N.E.2d 943, 952 (Ind. 2001) (emphasizing that multiple crimes or victims constitute a valid aggravating circumstance for imposing consecutive sentences).

## III. Ineffective Assistance of Counsel

Lucas contends that he received ineffective assistance from his trial counsel.

This Court reviews claims of ineffective assistance of counsel under the two components set forth in *Strickland v. Washington*, 466 U.S. 669, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment[.] Second, the defendant must show that the deficient performance prejudiced the defendant. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Wentz v. State*, 766 N.E.2d 351, 360 (Ind. 2002) (internal citations omitted).

There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.

*Id*. (quoting *Stevens*, 770 N.E.2d at 746–47 (citations omitted)). Specifically, Lucas contends that his trial counsel performed deficiently because his counsel induced him into accepting a plea agreement containing an illegal sentence. As we have previously concluded in this memorandum decision, however, Lucas's sentence was not illegal. Lucas has failed to establish deficient performance; therefore, he did not receive ineffective assistance of counsel.

# IV. Judicial Bias

[9] Lucas contends that he was denied due process by the post-conviction court's alleged bias. A judge is presumed to be unbiased and unprejudiced. *Cook v. State*, 612 N.E.2d 1085, 1088 (Ind. Ct. App. 1993). To rebut such a presumption, the defendant must establish, based on the judge's conduct, actual bias or prejudice which places the defendant in jeopardy. *Id.* "Such bias or prejudice exists only where there is an undisputed claim or where the judge has expressed an opinion on the merits of the pending controversy." *Id.* Adverse rulings do not support a claim of bias. *Id.* Specifically, Lucas contends that the post-conviction court was biased by (1) failing to grant him a continuance to allow him to subpoena his trial counsel and (2) ruling that his sentence was not illegal. Lucas's contentions are nothing more than expressions of his dissatisfaction with adverse rulings by the post-conviction court which do not support a claim of bias. Lucas has failed to establish that the post-conviction court was biased against him.

[10] The judgment of the post-conviction court is affirmed.

May, J., and Altice, J., concur.